[Civ. No. 590.   Third Appellate District.—April 23, 1909.]

## MARY J. LONG, Appellant, v. SIMON NEWMAN, HENRY SINSHEIMER, and PACIFIC LOAN ASSOCIATION, a Corporation, Respondents.

BUILDING AND LOAN ASSOCIATION—LOAN TO MEMBER—DEED OF TRUST—DEFAULT IN PAYMENTS FOR SIX MONTHS—SALE BY TRUSTEES—INJUNCTION DISSOLVED.—When a member of a building and loan association to whom a loan is made on the installment premium plan, secures it by a pledge of her shares and a note and deed of trust, providing for monthly payments for interest, premium, and dues, and for a sale after default in payments for the period of six months, and for declaring the whole sum due, permits more than six months to elapse without payment, notwithstanding urgent solicitation therefor, the association was within its rights in directing the trustees to sell the property, and a temporary injunction to restrain them from so doing was properly dissolved.

ID.—PRESUMED KNOWLEDGE OF LAW AND OF CONTRACT.—The borrowing member is presumed to know the law from which is derived the vitality of the contract which she entered into, presumably read and became familiar with the full import and scope of the terms of the contract before making herself a party to it, and must have known and understood that she emphasized the provision of the law in conferring upon the board of directors the discretionary power to declare and conclusively determine that the whole loan shall become due and payable in the event that she should be in default for the period of six months in any of the payments which she promised to make.

ID.—KNOWLEDGE OF CREDITS IN PASS-BOOK—KNOWLEDGE OF BY-LAWS.—The member is chargeable with the knowledge of credits entered in a pass-book which she possessed, and is also chargeable with knowledge of the by-laws of the association of which she is a member, especially where the collateral agreement by which she pledged her shares of stock therein as part security for the repayment of the loan makes the by-laws a part of the terms.

ID.—INEXCUSABLE NEGLECT TO OBTAIN INFORMATION OFFERED.—When the member was importuned to come to the office of the association and ascertain the exact amount due from her thereto, which she had the right as a member to obtain without invitation, and make investigation into her affairs therewith, and failed to do so, if she must suffer to some extent by the sale of her property, her own inexcusable remissness is alone responsible for it.

ID.—NOTICE IN CASE OF ARREARAGES NOT REQUIRED.—The law does not prescribe any notice in the case of arrearages in any payments which a borrowing member is required to make by the terms of the

contract; and when it clearly appears that such member was in arrears in payments required beyond the time after which the law provides that the directors may in their discretion order the property to be sold, and she knew her own default, and the directors having, in the exercise of their option, declared the whole of the loan to be due, they were clearly within their legal rights in ordering the property to be sold, whether the member had been previously notified of the precise amount due or not.

ID.—COMPLAINT NOT WARRANTING INJUNCTION PENDING SUIT.—When there is no charge of mistake or fraud in the complaint, and it does not point out specifically alleged overcharges, but only alleges in general terms that the interest charged exceeds the interest due, and the corporation is not entitled to the penalty claimed, it does not warrant a temporary injunction.

ID.—DISCRETION IN GRANTING OR DISSOLVING INJUNCTION—ABUSE— REVIEW UPON APPEAL.—An order granting or dissolving a temporary injunction is in the discretion of the court below, and its discretion will not be interfered with upon appeal, unless it clearly appears to have been abused. But it is held that, under the facts in this case, this court would be justified in holding it to be an abuse of discretion if the court had refused to dissolve the temporary injunction.

APPEAL from an order of the Superior Court of the City and County of San Francisco, dissolving a temporary injunction.   J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

Dudley Kinsell, for Appellant.

Naphtaly & Freidenrich, for Respondents.

HART, J.—The defendant, Pacific Loan Association, is a building and loan corporation, organized and existing under and by virtue of the laws of this state.

On the 30th of April, 1901, the plaintiff, having borrowed from said defendant the sum of $4,200, on the general plan of building and loan concerns, executed and delivered to said defendant her promissory note in said amount, payable ten years after date, with interest at the rate of seven per cent per annum.  For the purpose in part of securing the payment of said loan, the plaintiff executed a deed of trust to a certain lot or piece of real property situated in the city of San Francisco to the defendants, Simon Newman and Henry

Sinsheimer, as trustees, with full power to sell said premises at public auction to satisfy the loan secured from said Pacific Loan Association, in the event of default by the plaintiff in any of the payments required by her contract with said association.

It is alleged in the complaint that the defendants, claiming that the plaintiff had failed to make the payments required of her under her contract, had taken steps to sell said premises "on the 12th day of March, 1908." It is alleged that the plaintiff "has caused to be fully paid and discharged all of the interest due upon said promissory note; but the said defendant, Pacific Loan Association, has disputed such payments and has claimed a larger sum and amount to be due than is actually due under the terms of said instrument," etc.; that the plaintiff has at all times been and is now ready, able and willing to pay all interest, charges and penalties of "every kind and character justly due from her to said corporation defendant, under the terms of said promissory note, or in any manner whatsoever due from her to said corporation defendant, but the said corporation defendant has at all times refused to accept and still refuses to accept the payment of any other sum or amount than the full amount wrongfully and unjustly claimed by it as aforesaid." It is alleged that the defendants, Newman and Sinsheimer, threaten to sell the said premises; that said property is of the value of $9,000, and that "a sale, or purported sale thereof, as threatened by said defendants, will cause great and irreparable injury to the plaintiff, and will cast a cloud upon her title to the premises aforesaid; and that such injury will be of a character for which pecuniary damages will not afford adequate compensation."

The prayer is that the defendant corporation be required to account "to this court for all moneys paid by and credits due to said plaintiff upon said promissory note," so that the amount, if any, due from plaintiff to the corporation may be adjudged by the court; that a provisional injunction or temporary restraining order be made, enjoining and restraining the defendants or their agents from publishing the said premises as for sale, and from selling the same, etc.

The complaint is verified, and upon the filing thereof the court below caused to be issued a temporary injunction as prayed for therein.

On the third day of April, 1908, upon motion of the defendants previously noticed, said motion having been made on the pleadings (complaint and the affirmative matter set up in the answer) and an affidavit of Emil Gunzburger, secretary of the corporation defendant, the court made an order dissolving the temporary injunction.

It is from said order that this appeal is taken.

The only points made by the appellant on this appeal are those involved in the contention that the amount claimed to be due is unliquidated and disputed and that, under the terms of the trust deed, she was entitled at the hands of the corporation to specific notice of the exact amount due it from her before the right to sell the property covered by said deed accrued to said corporation; or, to put the proposition as it is stated in his brief by counsel for the appellant: "That a specific demand for the precise sum due was absolutely necessary as a condition precedent to the publication of notice of, or proceedings by the trustees for, the sale of the property; that before a sale could be lawfully attempted the plaintiff was entitled to have a statement of the amount due, and an account of the items, including the character of the fines and penalties claimed, and also a statement and accounting of the dividends, and accumulations of the stock, to be added as a credit to the payments by her"; that the corporation having failed to so apprise plaintiff of and demand from her the precise balance due it from her, she was entitled to the continuance of the preliminary injunction until the amount due was determined by the court, and an opportunity presented to her for a redemption of her property. Hence, it is claimed, the court erred in its order dissolving the preliminary injunction.

The facts as alleged in the answer and as disclosed by the affidavit of the secretary of the corporation do not, in our opinion, support the contention of the appellant.

By the provisions of section 1 of article XV of the by-laws of the defendant corporation, the same being set forth in full in the answer, there are two plans upon which said corporation makes loans—one known as the "gross premium plan," and the other as the "installment premium plan." By the former plan, the amount of the premium is deducted from the amount of the loan when made, while under the last-

mentioned or "installment premium plan" the whole amount of the premium is divided into one hundred and twenty equal installments, "one of which shall be paid by the borrower monthly, on the first Wednesday of each month, until the whole amount of premium is paid, or the loan has been satisfied." Section 2 of said article of the by-laws provides that "each stockholder, for each share of stock he may hold, shall be entitled to a loan of two hundred dollars from the funds of the Association by assigning for each two hundred dollars, or fraction thereof, so loaned, one share of the stock of the Association as collateral security, together with a mortgage on real estate," etc.

On the thirtieth day of April, 1901, the plaintiff and her husband borrowed from the association the sum of $4,200 on the installment premium plan, the amount of the premium being divided into one hundred and twenty equal monthly installments of $10.50. The plaintiff and her husband executed and delivered to the corporation their promissory note for the amount of the loan, payable ten years after date, with interest at seven per cent, payable monthly, and further promised to pay the monthly premium of $10.50. As security for the payment of the note, the plaintiff and her husband pledged to the association the twenty-one shares of capital stock in the association held by plaintiff, and as further security for the payment of said note, they executed and delivered to the corporation the deed of trust to which we have hitherto referred and covering the property, to restrain the sale of which by the corporation is the object of this proceeding.

It will thus be seen that the plaintiff, under the terms of the loan, obligated herself to make the following monthly payments to the association: $24.50 for interest, $10.50 for premium, and $21 for dues, aggregating a monthly payment of $56.

The note provides, among other things, that "in case said monthly interest, or any part thereof, or any of said installments of premium aforesaid, or any part thereof, is not paid as it comes due and payable, then the whole of said principal sum, and the interest due thereon, together with the whole of said premium, shall be and become forthwith, due and payable, at the option of the holder hereof, and notice of the exercise of such option is hereby waived."

A covenant of similar tenor and import to the foregoing is contained in an instrument executed by the plaintiff and her husband assigning to the association her shares of stock therein as security for the payment of said note.

From the affidavit of Gunzburger it appears that plaintiff, for two or three years after securing the loan, made payments regularly, but after that time "the payments became irregular and were made after long intervals"; that "during all the time since April 30, 1901, plaintiff had a pass-book which was issued to her by said defendant corporation, wherein was entered each payment as made by plaintiff," and that in all said transactions plaintiff was represented by her son, Percy V. Long, Esq.; that "during the entire year of 1906, no payment whatever was made by plaintiff to defendant corporation on account of interest or premium, as specified in said promissory note or on account of dues, except the sum of one hundred and twelve dollars, paid by her through Percy V. Long, on the 26th day of November, 1906"; that "since said last-named day, no payment whatever has been made by plaintiff either on account of interest or premium or dues."

On the 10th of May, 1907, said Gunzburger, as secretary of said association, addressed a letter to the plaintiff, informing her that her "account is beyond the time allowed by the By-Laws many months and the Building and Loan Commissioners have issued instructions to collect or foreclose all such accounts," and requesting her to pay up and satisfy her delinquencies immediately.

On October 23, 1907, one C. C. Hamilton, representing plaintiff, wrote to Gunzburger, stating that "about two months ago, the statement of the Pacific Loan Association against Mary J. Long was forwarded to me for investigation," and declaring that he (Hamilton) was unable to understand the statement and certain specified items therein contained, and requesting Gunzburger to send him information "concerning the nature of this instrument (referring to the deed of trust) that will enable me to understand the condition of the indebtedness mentioned." To this letter Gunzburger replied, under date of October 25, 1907, explaining minutely the nature of the contract between the plaintiff and the corporation, and stating that, if Mr. Hamilton would call at

the office of the association, he would be given all the information relative to the transaction he might desire.

To this last letter it does not appear that there was any reply either by Hamilton or the plaintiff.

Gunzburger, in a letter under date of December 10, 1907, informed the plaintiff that at the next meeting of the board of trustees of the association it would adopt a resolution authorizing the trustees to proceed to act under the power vested in them by the deed of trust, and sell the property described in said deed, said letter, moreover, containing the following: "If you wish to avoid expenses, call at once and either pay or arrange about giving a deed without costs."

Later a sale of the property under the trust deed was ordered, notice whereof having been published for three successive weeks, and the time specified for such sale being the fifth day of March, 1908. "On the day prior to said last named date," proceeds the affidavit of Gunzburger, "Mr. C. C. Hamilton, representing the plaintiff, requested that such sale be postponed for one week; thereupon said sale was postponed until the 12th day of March, 1908; plaintiff's said representative was informed of said postponement, and notice of said postponement of said sale was duly published." Gunzburger further deposes that he has had some experience in dealing in real estate in the city of San Francisco; that he is familiar with the property covered by the trust deed and with the value thereof; "that said property is assessed on the last assessment roll at the sum of $3,540.00 and the market value of said property in the opinion of deponent does not exceed the sum of $6,000.00."

The foregoing statement represents, substantially, the facts upon which the court below founded the order complained of on this appeal.

Section 639 of the Civil Code contains, among others, the following provisions: " . . . Whenever a borrowing member shall be six months in arrears in the payment of his dues, or interest, or premium, the whole loan shall become due at the option of the board of directors; and they may proceed to enforce collection upon the securities held by the association. The withdrawal value, at the time of the commencement of the action, of· all shares pledged as collateral security for the loan, shall be applied to the payment of the loan, and said shares, from that time, shall· be deemed surrendered to the

association." (The legislature of 1907—Stats. 1907, page 927 —amended this part of said section so that now when a borrowing member is in arrears three months the whole loan shall become due at the option of the board of directors, etc.) It is thus to be observed that the statute itself, where the contract does not itself fix the time, practically fixes the time at which the whole loan shall become *due* in the case of a borrowing member who is in arrears for a period of six months in the payment of either his dues, or interest, or premium, by investing the directors of the association with the discretion of so declaring and thereupon proceeding to enforce collection of the whole amount upon the securities held by the association.

The several instruments executed by the plaintiff and her husband and which constitute the written evidence of the terms of her contract with the association plainly provide for the payments required to be made and the penalty for, or the consequences of default in, any of such payments in accordance with the requirements of the statute.

The plaintiff is presumed to know the law from which is derived the vitality of the contract into which she entered, and presumably read and became thoroughly familiar with the full import and scope of the terms of said contract before making herself a party to it. She must, therefore, have known and fully understood that in her agreement she emphasized the provisions of the law in conferring upon the board of directors the discretionary power of declaring and conclusively determining that the whole loan shall become due (that is, *payable*) in the event that she was in default for a period of six months in any of the payments which she promised and thus obligated herself to make.

Moreover, she had a pass-book in which were inserted all credits to which she became entitled by reason of the payments made by her. Besides, she was a member of the association and as such must be deemed to have some knowledge of its by-laws, and particularly is this true since the collateral agreement by which she pledged her twenty-one shares of stock in the association as partial security for the repayment of the loan makes the by-laws a part of its terms.

The complaint itself declares that the association rendered an account to the plaintiff, showing that the principal and

interest on the promissory note amounted to the sum of $8,056.81; that the plaintiff was entitled to a credit thereon of $2,058, leaving a balance due of $5,998.81. It is true that the complaint alleges that the plaintiff "claims" that the large balance so claimed is "in consequence of penalties incurred by plaintiff, the kind, character and amount of which are unknown to plaintiff," and declares that the same do not exist; yet, there is no allegation charging fraud or mistake against the association in its claim as to the balance due as exhibited by the statement so rendered; nor is there any evidence in the record that said statement was incorrect or that the plaintiff was not thus fully apprised of the precise state of her account with the association.

If the account, in the opinion of the plaintiff, was erroneous for any reason; if it contained incorrect items of charges against her; if, in short, she were without sufficient information as to the status of the account to enable her to offer the exact amount due the corporation and thus satisfy all delinquencies, she could have experienced no difficulty in securing full knowledge of the same at the association's office, to which, according to the undisputed facts, she had been repeatedly and importunately invited for that purpose and to which, as a member, she had a right to go at any time without invitation and make full investigation into her affairs with the association. This she did not do, and if now she must suffer to some extent by reason of the sale of her property her own inexcusable remissness is alone responsible for it.

But it is absolutely clear that she was in arrears in her payments beyond the time after which the law provides that the directors may, in their discretion, order the property to be sold, and that she knew she was so in default, and the board of directors, having in the exercise of their option declared the whole loan to be due, in ordering the property to be sold and taking the steps necessary to sell the same, were clearly within their rights under the law and the contract, whether plaintiff had previously been notified of the precise amount due or not; for, as to a borrowing member, the law does not prescribe any notice in the case of arrearages in any payments he is required to make. (Civ. Code, sec. 639, *supra.*) Nor do we find any such requirement in any of the several instruments constituting the contract between the association

and the plaintiff. In other words, under the terms of her contract, as well as under the provisions of the law, the plaintiff had, by her delinquencies, forfeited her rights under said contract, if the directors of the corporation so determined, and the trustees thereupon authorized to proceed with a sale of the property for the satisfaction of the loan.

The contention of the appellant to the effect that the allegation in the complaint that plaintiff is ready, able and willing, ''and now offers to pay all of such interest and penalties as may be found to be justly due from her to the corporation defendant, by this court, and in addition thereto to pay the sum of $4,200,00, the principal of said promissory note,'' operates to prevent the sale of the property cannot be maintained under the averments of the complaint. The appellant does not offer a specific amount, and, besides, there having been default in the required payments for a period of six months, the law gives the association the right without any qualification to sell the property under the terms of the trust deed, if the directors, after delinquencies covering that period, elect to exercise that right.

Of course, we do not mean to be understood as saying that, had plaintiff alleged in her complaint that there were erroneous debits against her in the account, and that such overcharges were due either to mistake or fraud on the part of the association, and had offered to pay the full amount, specifying the same, minus such erroneous charges, she would not have been entitled to an adjustment of the account by the court and an order restraining the sale of the property pending such determination. But, as we have seen, there is no charge of mistake or of fraud, and her complaint does not point out specifically the alleged overcharges, but in a general way only states that the interest charged exceeds the ''interest justly due'' and that ''the said corporation defendant is not entitled to any of the penalties by it claimed,'' etc.

We have examined the cases of *Porter* v. *Jennings,* 89 Cal. 445, [26 Pac. 965], and *Bullard* v. *Kempf,* 119 Cal. 13, [50 Pac. 780], cited by counsel for appellant. These cases have no application to the facts as disclosed by this record.

It is the settled rule in California that an order granting or dissolving an injunction is a matter of discretion with the lower court, and that such discretion will not be interfered

'with by a reviewing court unless it clearly appears that it
has been abused.

In the case at bar, the facts are such, in our opinion, as
would justify an appellate court in holding it to be an abuse
of discretion if the court below had refused to dissolve the
injunction, *pendente lite.* The law by which the contract
into which plaintiff entered is expressly authorized is un-
ambiguous; the terms of said contract are themselves clear
and plain, and there is no valid reason disclosed excusing
plaintiff's failure to comply therewith, or, having so failed,
to prevent the association from securing its due by a fore-
closure upon the securities pledged for the repayment of the
money loaned. It is not shown, as before stated, that the
association has in anywise violated the law, or done any other
wrong which would justify a court of equity in interposing
in plaintiff's behalf.

The order appealed from is, for the foregoing reasons, af-
firmed.

Burnett, J., and Chipman, P. J., concurred.

A petition to have the cause heard in the supreme court,
after judgment in the district court of appeal, was denied
by the supreme court on June 22, 1909.