[Civ. No. 3948. First Appellate District, Division One.—February 28, 1922.]

EDITH M. WILBUR, Appellant, v. B. H. GRIFFINS, Respondent.

[1] PROMISSORY NOTE—VALIDITY OF BONUS—EXCESSIVE INTEREST—CONSIDERATION.—In this suit in equity brought for the primary purpose of enjoining the sale of corporate stock pledged as security for a loan, as evidenced by a promissory note executed prior to the repeal in November, 1918, of section 1918 of the Civil Code, treating the bonus exacted by defendant as additional interest, it could not be said that the rate of interest of 14.8 per cent per annum was so excessive as to constitute the transaction an unconscionable one; and, treating such bonus as one of consideration, in view of the amount of plaintiff's loan and the character of the security she offered, her position with reference to the validity of such bonus was not any stronger.

[2] ID.—INADEQUACY OF CONSIDERATION—EFFECT OF.—It is not neces-
sary that the consideration of a note shall be equal in pecuniary
value to the obligation incurred, and mere inadequacy of consid-
eration, except as a circumstance bearing upon the question of
fraud or undue influence, is not a defense to the note.

[3] RESCISSION—KNOWLEDGE OF FACT OF UNFAIR ADVANTAGE—RATI-
FICATION.—Failure to rescind a transaction promptly after a
knowledge of the fact of an unfair advantage taken must be
regarded as a ratification of the transaction.

[4] PROMISSORY NOTE—ACTION TO ENJOIN SALE OF SECURITY—TENDER
—PLEADING AND PROOF.—In a suit in equity brought by the
maker of a promissory note to enjoin the sale of corporate stock
pledged as security for its payment, the plaintiff must allege
and prove a tender of the amount due; and the plaintiff may not
justify the failure to plead such tender upon the ground that it
would have been useless, basing such contention upon the fact that
defendant rejected the offer made by her during the trial.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco. George E. Crothers,
Judge. Affirmed.

The facts are stated in the opinion of the court.

C. W. Eastin and H. Slikerman for Appellant.

John S. Partridge and Karl C. Partridge for Respondent.

KNIGHT, J., *pro tem.*—This is a suit in equity, brought
for the primary purpose of enjoining the sale of corporate
stock pledged as security for a loan. Judgment was awarded
to defendant, and plaintiff appeals. The complaint is a
lengthy one and more than half of it is devoted to the allega-
tion of matters which in our opinion are utterly foreign to the
real controversy between the parties. The record on appeal
is also voluminous, consisting of some 1,960 typewritten
pages, the greater portion of which is made up of evidence
received in support of those immaterial issues. Stripped of
extrinsic matters, the facts of the case may be stated as fol-
lows:

On September 3, 1915, plaintiff borrowed from defendant
the sum of $38,000, for which she gave him a promissory
note for $45,600. The amount of the note in excess of
the amount of the loan was a bonus demanded by defendant

at the rate of $2,000 for every $10,000 loaned. The note was secured by a pledge of 2,500 shares of the capital stock of the Harbor Center Land Company, which stock plaintiff valued at $500,000. On November 3, 1915, plaintiff applied to defendant for an additional loan of $12,000, which the defendant granted, and at that time defendant exacted a new note for the sum of $60,000, which included a bonus of $10,000 for the making of the loan. That note was made payable two years and ten months after date, with interest at seven per cent, compounded monthly, and provided that if the interest was not paid as agreed the entire principal sum should forthwith become due and payable. The stock was again pledged as security for the second note. On February 18, 1918, the interest on the loan was fourteen months in arrears. Defendant demanded payment of the note, and thereupon plaintiff, for the purpose of obtaining an extension of time until September 3, 1918, assigned to defendant as additional security the sum of $14,072.60, owing to her from said Harbor Center Land Company and appearing on its books. On September 26, 1918, the plaintiff, then being in arrears about one year and ten months in the payment of the interest, was served with a notice by defendant to the effect that he would, under the terms of the note and collateral agreement, proceed to sell the stock so pledged. This action was then brought to enjoin the sale of the stock and for an accounting to determine the amount due. During the trial of the action and just before it concluded, to wit, on October 1, 1919, upon the joint demand of plaintiff and defendant, the Harbor Center Land Company paid its indebtedness to plaintiff, which then amounted to the sum of $23,168.46, and defendant credited that amount as a payment on the said note, leaving a balance due on March 1, 1920, of the sum of $51,296.90, with accruing interest from that date.

At the time of the commencement of the action plaintiff made no pretense that the note was not due or that she had paid anything thereon, but her suit in equity was based upon these principal propositions: First, that the bonus of $10,000 was void and may not be collected; secondly, that defendant took an undue advantage of plaintiff in obtaining the collateral agreement; third, that defendant purposely failed to collect the book account due from the Harbor

Center Land Company, and thereby prevented her from obtaining part of the money to pay off the loan; fourth, that the defendant and George S. Wall, the president of the Harbor Center Land Company, acted in collusion to prevent plaintiff from obtaining money due her from said Land Company, and also to prevent her from ascertaining the true condition of the company's affairs.

While in this state the precise question of the validity of a bonus as it has arisen and is being presented on this appeal has apparently never been passed upon, yet in a number of cases similar questions, such as excessive rates of interest and agreements to pay ''premiums'' for making loans, have been considered, and in all of those cases it has been consistently held that in the absence of fraud, duress, undue influence, or confidential relations courts of equity will not interfere with the agreements made by the parties.

*Norris* v. *Wright,* 36 Cal. App. 278 [171 Pac. 1087], was an action for damages claimed to have been sustained by plaintiff by reason of an alleged inequitable sale of plaintiff's interest in an estate. Plaintiff borrowed money from defendant at various times, for which she gave her promissory notes, secured by mortgages on her interest in the estate. The notes were executed for much larger sums than the actual amount of the loans, and besides bore interest at the rate of two per cent per month. When the total amount of those notes reached the sum of $900 defendant refused to loan more money, but purchased plaintiff's interest for $1,500, by paying plaintiff an additional $400, and the balance of the $1,500 was made up of ''expenses,'' etc., including the payment to the defendant of a commission of $75 for making the sale to himself. The court said: ''It is perfectly apparent that the plaintiff was unfamiliar with business affairs and that the defendant imposed unconscionable burdens upon her; but it is not claimed that at the time of the transactions she was an infant, or incompetent, or that the relations between her and the defendant were confidential. No evidence was introduced to show that the defendant made any misstatements or misrepresentations of fact to the plaintiff, or that he practiced upon her any deceit or fraud.'' It was held that the appellate court was powerless, as was the court of first instance, to afford plaintiff any relief.

In *Boyce* v. *Fisk*, 110 Cal. 107 [42 Pac. 473], plaintiff sought to be relieved of a mortgage given to secure a small loan bearing interest at the rate of forty-eight per cent per annum, and compounded monthly. It was held that where the parties agree by a contract in writing for the payment of any rate of interest it must be allowed according to the terms of the agreement, and the fact that the bargain is a very hard and unreasonable one is not sufficient *per se* to induce the court of equity to interfere with the contract of the parties, for the reason that courts of equity are as much bound by the laws of the land as courts of law.

In *McNamara* v. *Oakland B. & L. Assn.*, 131 Cal. 345 [63 Pac. 670], the question arose in an action brought by plaintiff to cancel a mortgage. Among the other points urged by the plaintiff was one that while he had signed a note for $1,200 he actually received a loan of only $960. The balance, $240, was retained as a "premium" by the Building & Loan Association, of which plaintiff was a member. The court held that plaintiff entered into the transaction knowingly and that he was consequently bound by the terms of his contract.

The case of *Long* v. *Newman*, 10 Cal. App. 430 [102 Pac. 534], was also a building and loan case, in which plaintiff agreed to pay as a "premium," in addition to the interest, $10.50 per month for a period of 120 months, or $1,260, on a loan of $4,200. The suit was one for an injunction and accounting and the court held that the terms of the contract were themselves clear and plain and that plaintiff was bound thereby.

In states where usury laws exist the courts treat the question of bonus as additional interest by adding it to the normal rate of interest provided for in the contract. Where the sum of the normal rate of interest, plus the bonus, is above the legal rate the contract is held to be tainted with usury; where it is below the legal rate the contract is upheld. (39 Cyc. 972; *Fowler* v. *Equitable Trust Co.*, 141 U. S. 384 [35 L. Ed. 786, 12 Sup. Ct. Rep. 1]; Id., 141 U. S. 409, [35 L. Ed. 793, 12 Sup. Ct. Rep. 7]; Id., 141 U. S. 411 [35 L. Ed. 794, 12 Sup. Ct. Rep. 8, see, also, Rose's U. S. Notes].) [1] If the bonus here be regarded as interest the contract must be upheld, for the reason that section 1918 of the Civil Code as it stood at the time of

these transactions and up to the time of its repeal in November, 1918, provided that "parties may agree in writing for the payment of any rate of interest, and it shall be allowed, according to the terms of the agreement, until the entry of judgment." Applying the rule of computation followed in the states having usury laws to this case and adding to the rate of interest thus found additional interest on the bonus of $10,000 at the rate of seven per cent per annum, and fixing the period of the loan at three years, the total rate of interest on the amount actually loaned, to wit, $50,000, would be 14.8 per cent per annum, providing the loan was paid at maturity. If not paid at maturity the rate of interest would, of course, be less. Bearing in mind that in *Boyce* v. *Fisk, supra,* the rate of interest was forty-eight per cent per annum, and in *Norris* v. *Wright, supra,* it was twenty-four per cent per annum, and that the contract in each of those cases was sustained, we are unable to say here that the rate of interest of 14.8 per cent per annum is so excessive as to constitute the transaction an unconscionable one.

Treating the question of bonus as one of consideration, we are unable to see that plaintiff's position is any stronger. The consideration for the execution of the note for $60,000 was admittedly the loan made by defendant of the sum of $50,000. The stock pledged as security was issued by a company whose business was that of subdividing a large tract of land and disposing of it in smaller parcels. Defendant explained that his reason for exacting the bonus was that the security offered by plaintiff was not bankable and that it would necessarily take time to realize upon it; that is, that banks would not loan money on that character of security and therefore borrowers would be obliged to obtain loans either from private lenders, who would necessarily take the chance either of a loss or of a long delayed repayment. This assertion seems to find support in the allegations of the plaintiff, for it is there alleged that while the pledged stock has a value of $500,000, plaintiff has been unable to obtain sufficient money thereon from others to redeem the stock, and that she verily believes that if the stock is sold by defendant either the defendant or some confidential agent of his will become the purchaser, thereby preventing plaintiff from recovering the same.

[2] There being a consideration for the note, the note must be held valid, even though the consideration is inadequate for the reason that it is not necessary that the consideration of a note shall be equal in pecuniary value to the obligation incurred, and mere inadequacy of consideration, except as a circumstance bearing upon the question of fraud or undue influence, is not a defense to the note. (Daniels on Negotiable Instruments, sec. 180; *Earl* v. *Peck*, 64 N. Y. 598.) The only effect of inadequacy of consideration is that the contract cannot be specifically enforced in equity. (Sec. 3391, Civ. Code.)

In support of the contention that the bonus is void appellant relies mainly upon two cases, neither of which, in our opinion, is controlling here. In *More* v. *Calkins*, 85 Cal. 177 [24 Pac. 729], and Id., 95 Cal. 435 [29 Am. St. Rep. 128, 30 Pac. 583], the sole question involved was whether or not a mere naked promise in a deed of trust to pay the trustee the sum of $10,000 in addition to the other sums therein agreed to be paid was supported by a consideration. By the terms of the deed the trustee was empowered under certain conditions to sell the property conveyed to him and from the proceeds to deduct first, the reasonable expenses of the management of said lands and of the execution of the trust; secondly, to deduct the sum of $15,000 with interest at ten per cent per annum, which amount the grantor had borrowed from the trustee, "together with the additional sum of $10,000 without interest"; and third, to reimburse the trustee for any sums advanced by him in satisfying a mortgage with which the property was encumbered. It was claimed by the plaintiff and alleged in the complaint that said sum of $10,000 was intended to be paid to said trustee only in the event that an option then outstanding for the purchase of the property for $103,000 was not exercised, and that the trustee should thereafter sell the property to some other purchaser for that amount. The supreme court held, on the first appeal, which was an appeal from an order sustaining a demurrer to the complaint, that "the fact that it appears upon the face of the instrument that payment for all loans and advances, and compensation for all services, with extraordinary interest, is provided for, exclusive of the promise to pay $10,000 without interest, tends to corroborate the averment that there was no consideration for

the promise to pay the $10,000." And the supreme court goes on to say: "But for the presumption that there is a consideration for every promise in writing, there would appear to be no consideration for the promise to pay the $10,000 without interest." Upon the second appeal, which was after the action had been tried on the merits, the supreme court, after quoting the above language, held that "the construction thus placed upon the deed had become the law of the case, and the question of its correctness is not open to consideration upon this appeal." And it was further held that because it had not been shown that the trustee had furnished any other money, or assumed any other obligations, or rendered any other services, than appeared from the deed itself, there was no consideration shown for the promise to pay the $10,000. It will thus be seen that the provision for the payment of the $10,000 was, in the agreement and by the supreme court, treated as a transaction having no connection either with the loan of the $15,000 or with the management of the trust property. It presumably was intended, as alleged in the complaint, to be paid as a commission to the trustee in the event he sold the property for the sum of $103,000, which admittedly he did not do.

In the case of *Bridge* v. *Kedon,* 163 Cal. 493 [43 L. R. A. (N. S.) 404, 126 Pac. 149], also cited by appellant, plaintiff sued to enforce an assignment of the expectant interest of the defendant in the estate of his mother, who at the time of the assignment was living, but who died prior to the commencement of the suit. The assignment was taken to secure a loan made by plaintiff to defendant bearing interest at the rate of two and a half and three per cent per month. The main question involved in the case and on the appeal was whether or not a court of equity, notwithstanding the provisions of sections 700–703 and 1045 of the Civil Code, would enforce a release by an heir of his expectancy in the estate of his ancestor after it had devolved upon him by the death of his ancestor. The trial court decreed the enforcement of the assignment, but before doing so, reduced the interest on the loan to an amount it believed was reasonable. Such power in a court of equity is unquestioned. It cannot be disputed that a court of equity has not ample power to eliminate from a contract, sought to be enforced

in equity any unfair and inequitable elements contained therein, provided it may be done without making a new contract for the parties. But in this case it was not the holder of the contract who was dissatisfied with the exercise of the court's power in this respect. It was the defendant who appealed, and his appeal was not taken upon the ground that the court had no power to reduce the interest, but upon the ground of the invalidity of the assignment itself, and that was the real question considered by the supreme court on appeal.

The case of *Reed* v. *Bernal*, 40 Cal. 628, cited by plaintiff, is not in point. The court there merely held that a penalty inserted in a promissory note for its nonpayment was void. None of the other cases cited by plaintiff are similar in their facts to the case at bar and therefore they cannot be held as controlling here.

The contention made by appellant that an unfair advantage was taken of her by the defendant in this transaction, both at the time of and subsequent to the execution of the promissory note and collateral agreement, might well be dismissed with the statement that the evidence bearing upon these points shows that at best there is a mere conflict of proof. But we have, nevertheless, examined the evidence, and find that there is no merit in appellant's claim and we are entirely satisfied that the findings of the trial court are fully supported by the facts.

The plaintiff was a woman of much business experience. She had been the owner of a great deal of property, both real and personal, and had bought and sold much property extensively. She had also borrowed and repaid much money. She was the owner of a one-half interest in the Harbor Center Land Company and frequently examined its books and discussed and participated in its affairs. While it is alleged in the complaint that the defendant had been the attorney for appellant's mother and that she, plaintiff, trusted and had confidence in him, no fiduciary relation between plaintiff and defendant is alleged or claimed. When plaintiff first applied for the loan and defendant stated his terms, she flatly rejected them. Subsequently she returned and accepted the loan on the terms stated. Several weeks elapsed between those two periods of time, during which she was in active consultation with various attorneys. At

the time the loan was made defendant stated that it was
a loan of money on a speculative stock at highly inflated
values. It is evident that plaintiff was unable to obtain
the loan from others, on better terms, because she had
ample time to do so. If she believed that she had been
victimized by an "unconscionable" contract she took no steps
to relieve herself from it by a recession or repudiation. But,
on the contrary, she ratified the transaction in various ways.
She borrowed the first $38,000 on September 3, 1915, at
which time she agreed to the terms. Sixty days afterward
she borrowed $2,000 more on the same terms, and more than
two years thereafter again ratified the transaction by assign-
ing to defendant upon his demand additional security. The
subsequent ratifications were supported by a sufficient con-
sideration—the first by the additional loan and the second
by a forbearance to sue. (*Belloc* v. *Davis*, 38 Cal. 242;
*Burkle* v. *Levy*, 70 Cal. 252 [11 Pac. 643].) [3] If she de-
sired to rescind she should have done so promptly (sec.
1691, Civ. Code), and her failure to rescind promptly after
a knowledge of the facts must be regarded as a ratification.
(*Schmidt* v. *Mesner*, 116 Cal. 271 [48 Pac. 54].)

So far as concerns the charge that defendant refused to
assist plaintiff in certain proceedings she desired to take
against the Harbor Center Land Company and its selling
agency, the New Richmond Land Company, we are entirely
satisfied that the conclusions of the trial court in favor of
the defendant are sound. The complete answer to this charge
is that defendant did not agree with plaintiff in her in-
terpretation of the matters involved, nor did he support her
inclination to start proceedings, legal or otherwise, against
those companies, but, on the contrary, declined to lend his
aid to proposed litigation against either company, for the
reason that he believed such proceedings and litigation would
result in disaster to his security.

[4] Another reason why, in our opinion, plaintiff cannot
prevail in this action is that the allegations of her complaint
and the proof offered by her would not support a judgment
in her favor if granted.

It is admitted in the complaint that at the time of the
commencement of the action plaintiff was indebted to de-
fendant in the sum of $59,000. No sufficient tender of that
amount, however, is alleged or proved. Without making

such tender plaintiff will not be heard to complain in equity. (1 Joyce on Injunctions, sec. 607; *Buena Vista F. & V. Co.* v. *Tuohy,* 107 Cal. 243 [40 Pac. 386]; *Maddock* v. *Russell,* 109 Cal. 425 [42 Pac. 139]; *Wolfe* v. *Titus,* 124 Cal. 264 [56 Pac. 1042].) Nor will a dispute about the amount excuse a tender. (*Bell* v. *Bank of California,* 153 Cal. 234 [94 Pac. 889].) True, there is an attempt made to plead a tender in the complaint, but upon an analysis of it, it will be found to contain certain conditions and limitations which completely destroy its usefulness and purpose as a tender. (*Perkins* v. *Maier etc.,* 134 Cal. 372 [66 Pac. 482].) Appellant endeavors to justify the failure to plead a tender upon the ground that it would have been useless, and it is argued that the rejection by defendant of appellant's offer made during the trial to pay $36,000 in addition to allowing defendant to take the book account of $24,000 was sufficient to prove defendant would not have accepted any amount which did not include the bonus of $10,000. But whether or not defendant refused to accept such offer in court did not relieve appellant from pleading in the beginning a tender of the amount she admitted was due and of afterward offering proof of her ability to perform. (*Doak* v. *Bruson,* 152 Cal. 17 [91 Pac. 1001].) The immaterial matters first mentioned herein relate to various transactions between plaintiff and the Harbor Center Land Company, which occurred prior to the making of this loan. They throw no light on the controversy concerning the loan and we have therefore refrained from discussing them.

Finding no error in the record, the judgment is affirmed.

Tyler, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 27, 1922.

All the Justices concurred.

Waste, J., was absent and Richards, J., *pro tem.,* was acting.