[Civ. No. 7541.   Fourth Dist.   Sept. 2, 1965.]

PEOPLES FINANCE & THRIFT COMPANY OF BEV-
ERLY HILLS, Plaintiff and Appellant, v. MIKE-RON
CORP., INC., et al., Defendants and Appellants.

Staitman & Snyder and Jack M. Staitman for Plaintiff and
Appellant.

C. A. Broderick and Armond M. Jewell for Defendants
and Appellants.

BROWN (R.M.), J.*—This is an appeal by the defendants from a judgment of foreclosure of four deeds of trust and for a deficiency judgment under a promissory note for the payment of which the trust deeds were executed and delivered as security. The plaintiff also appeals from only a portion of the judgment, i.e., for the failure of the court to grant prejudgment interest from the date of maturity of the note to the date of judgment.

By written stipulation the cause was submitted to the trial court upon the pleadings and an agreed statement of facts and supplemental stipulations.

Plaintiff, a California corporation, is an industrial loan company. The defendants entered into a loan transaction with the plaintiff, executing a certain promissory note secured by four separate deeds of trust on respective parcels of real property owned by the defendants. According to the provisions of the note the loan was in the amount of $30,000 payable in 12 consecutive monthly installments of $2,500 each, commencing on January 15, 1962, and terminating on December 15, 1962. The interest rate provided in the note was 3 per cent per month, or $6,000 minimum, whichever was more, with $6,000 interest paid in advance, plus a payment for a loan fee of $4,000 to plaintiff. The net amount received by defendants was $20,000, and was to be used by them to pay existing debts of the defendant Mike-Ron Corp., Inc.

Defendants made three monthly payments for a total of $7,500 and thereafter refused to make any further payments as demanded by plaintiff which, in due time, filed its complaint for the foreclosure of the deeds of trust.

In this action the plaintiff claimed a balance of $22,500 plus charges in the sum of $180.50, as well as attorneys' fees.

In defense, the defendants filed an answer and counterclaim admitting most of the facts but alleging that by this note they were required to pay interest at a rate exceeding 80 per cent per annum simple interest and claimed certain defenses, such as, that the loan transaction violated Financial Code section 18655 and thus was in the purview of Financial Code section 18650 and entirely unenforceable by plaintiff because of the excessive rate of interest and in effect the purposes of Financial Code section 18649 were evaded; that the charges were in excess of 80 per cent and constituted an

*Assigned by the Chairman of the Judicial Council.

unconscionable bargain precluding the plaintiff from any relief from a court of equity; and as a last defense, that the charges in excess of 80 per cent constituted a violation of the California usury laws (Deering's Gen. Laws, Act 3757).

After submission the trial court filed a memorandum opinion setting forth that Financial Code section 18649 expressly exempts loans of $10,000 or more from the maximum charges to which industrial loan companies are limited by section 18655; that the section was not used for the purpose of evading a law pertaining to such lending institutions, and it was the court's determination that the evasion contemplated by the Legislature was the addition of charges or other amounts to make a loan equal to or exceed $10,000 and that here, the money actually received was considerably in excess of $10,000.

The court found in its findings of fact that the loan transaction did not constitute a use under Financial Code section 18649 for the purpose of evading the industrial loan laws of the State of California. In its conclusions, it gave judgment to plaintiff for foreclosure in the amount of $22,500, attorneys' fees, and costs. The court stated in another conclusion that the plaintiff was exempted from the charge limitation provisions of Financial Code section 18655 as to loans in excess of $10,000 which are specifically exempted from the provisions of the Financial Code of the State of California.

Judgment of foreclosure and order of sale was made by the court. From this judgment the parties filed their notices of appeal.

Article XX, section 22 of the California Constitution, under the heading "Interest rates," sets forth the rate of interest on loans without agreement between the parties at 7 per cent, and not to exceed 10 per cent by agreement between the parties. The pertinent portions of that section as it affects the matter before us are set forth in the third paragraph thereof, as follows:

"However, none of the above restrictions shall apply to any building and loan association . . . , or to any corporation incorporated in the manner prescribed in and operating under that certain act entitled 'An act defining industrial loan companies, providing for their incorporation, powers and supervision,' . . . The Legislature may from time to time prescribe the maximum rate per annum of, or provide for the supervision, or the filing of a schedule of, or in any manner fix, regulate or limit, the fees, bonus, commissions,

discounts or other compensation which all or any of the said exempted classes of persons may charge or receive from a borrower in connection with any loan or forbearance of any money, goods or things in action.'' (Added Nov. 6, 1934.)

Financial Code section 18649 reads:

''The following sections of this division do not apply to any bona fide loan of a principal amount of ten thousand dollars ($10,000) or more or to an industrial loan company in connection with any such loan if the provisions of this section are not used for the purpose of evading this division. Sections 18650, 18652, 18653, 18655, 18656, 18657, 18658, 18667, 18670, 18671, 18672.'' (Added Stats. 1957, ch. 822, p. 2044, § 1.)

According to defendants' interpretation of the Financial Code section, an industrial loan company which makes a loan in excess of $10,000 does so at its own peril inasmuch as the court could determine any loan above $10,000 was an evasion of the purpose of the Industrial Loan Act. Plaintiff replies that to have such an interpretation affecting the various exempted classes of lenders such as industrial loan companies and personal property brokers would destroy available sources of financing for commerce in the state.

In *Matulich* v. *Marlo Investment Co.*, 7 Cal.2d 374 [60 P.2d 842], the court discussed the situation existing between the adoption of the constitutional amendment of section 22, article XX, and the adoption by the Legislature of laws regulating personal property brokers. It held that during that time there was no law of the state which limits the rate of interest which may be charged by personal property brokers.

In *Wolf* v. *Pacific Southwest etc. Corp.*, 10 Cal.2d 183 [74 P.2d 263], there is a discussion of the exempt organizations set forth in article XX, section 22 of the Constitution, and it was stated that at that time as far as the exempted designated organizations were concerned, the Legislature had not acted respecting the interest charges which may be made by a personal property broker and thus there was no provision of law, either statutory or constitutional, limiting the amount of interest a personal property broker may exact for a loan made by him.

Since those cases, the Supreme Court has discussed the matter in *Carter* v. *Seaboard Finance Co.*, 33 Cal.2d 564 [203 P.2d 758]. It did not overrule *Matulich* and *Wolf*, and further stated that the regulation of the business of personal

property brokers was entirely within the control of the Legislature (pp. 582-583).[1] This is in effect an extension of the prior interpretive decisions of the Supreme Court heretofore cited regarding the applicability of the usury laws of the State of California as embodied in the constitutional amendment to the exempted classes as stated therein. While this case deals primarily with personal property brokers, it is by the very language of the decision itself and by the promulgation of the Legislature in regulating the exempted classes, applicable equally as well to industrial loan companies as personal property brokers, pawn brokers, etc. The court, in discussing the rationale for the amendment to the Constitution, stated at pages 581-582:

"The argument to the voters in favor of the proposed amendment—and as stated there was none against it—emphasized the fact that the inflexible provisions of the usury law of 1918 had been proved unsatisfactory as a curb on unscrupulous exactions of money lenders and that the specifically named exempted classes 'have distinctive and individual problems peculiar to their respective classes of business. . . . The Usury Law attempted to cover all classes, and has failed miserably.' . . ."

The court further stated:

"The foregoing history is a demonstration that it was the purpose of the constitutional amendment of 1934 to free the Legislature from the restraints imposed by inflexible usury provisions so that interest and charges more appropriate to business conditions peculiar to each of the exempted classes could be established. Those who voted for the 1934 amendment had reason to expect that the exempt classes would not remain unregulated indefinitely. But until the Legislature exercises the power granted to it by the amendment to regulate the business of lenders in a manner appropriate to each exempted class, the class not so governed by legislation is subject to *no restriction* on interest rates or charges." (Italics added.) (P. 582.)

It will be noted that section 22053 of the Financial Code which deals with personal property brokers contains almost an identical section to Financial Code section 18649, except as to the amount.

---

[1]See also Assembly Interim Committee on Finance and Insurance Report, 1959-61, volume 15, No. 24, pages 41-42, 54.

In 1951 the Commissioner of Corporations inquired of the Attorney General as to whether or not there was any limitation on the rate of charges which may be contracted for by the personal property brokers in connection with a bona fide loan in excess of $5,000. The Attorney General, in volume 17 of the Attorney General's Opinions, at page 84, stated: "There is no maximum limit on the rate of charge which may be collected on bona fide loans of a principal amount of $5,000.00 or more."

The defendants claim that the loan interest charges are excessive, unconscionable, and should not be allowed and that by obtaining this loan, this section was used for the purpose of evading the other sections in this Act which provide for penalties and fixed rates and charges. The court made a finding that there was no evasion. The defendants failed to present any testimony whatsoever of any evasion, which would be their duty. Here, the defendants did receive at least $20,000 from the loan, which shows that the loan was bona fide.

The excepted sections set forth in Financial Code section 18649 are: Section 18650, which refers to charges and interest in excess of the maximum; section 18652, which defines "charges"; section 18653, defining "unpaid principal balance"; section 18655, as to maximum charges; section 18656, maximum charges with insurance; section 18657, computation of charges, and defining "month"; section 18658, display of schedule of charges and approval by commissioner; section 18667, credit or refund of excess payments; section 18670, loan requirements as to signed statements of borrowers, advance payments, receipts and cancellation and return of note; section 18671, prohibition of splitting loans to receive a higher rate of interest; and section 18672, having more than one loan at a time in order to obtain a higher rate of interest.

Thus, all of these sections above mentioned are excluded under section 18649 when the loan is a bona fide loan in excess of $10,000.

The defendants also argue that the court, sitting in equity, may avoid the enforcement of an obligation otherwise valid on the grounds that the interest charged constitutes an unconscionable bargain. They rely on Civil Code section 3391 as to this particular issue, though the plaintiff claims that this section has no applicability to the present factual situation before the court.

In the recent decision of *Wooton* v. *Coerber*, 213 Cal. App.2d 142, at page 150 [28 Cal.Rptr. 635], the court said:

"To permit appellants to avoid the consequences of the bargain (which their own testimony indicates they believed had been made) would not be in accord with the beneficent intendment of the usury laws.

" 'The usury law is to be used as a shield and not as a sword.' (*Haines* v. *Commercial Mortgage Co.*, 200 Cal. 609, 621 [254 P. 956, 255 P. 805, 53 A.L.R. 725].) 'The Usury Act is intended to prevent the charge of an excessive rate of interest, and may not be used as an engine to perpetrate an injustice.' (*Van Noy* v. *Goldberg*, 98 Cal.App. 604, 609 [277 P. 538].)"

In *Boyce* v. *Fisk* (1895) 110 Cal. 107 [42 P. 473], the court discusses the lack of a usury law in force and effect at that time. It was held that where the parties agree by contract in writing to payment of any rate of interest, it must be allowed according to the terms of the agreement, and even though the bargain was hard and unreasonable, a court of equity would not interfere with the contract of the parties for the reason that courts of equity are as much bound by the laws of the land as courts of law. (Pp. 112, 116.) (See *McNamara* v. *Oakland etc. Assn.*, 131 Cal. 336 [63 P. 670], and *Long* v. *Newman*, 10 Cal.App. 430 [102 P. 534].)

Thus, we must come to the conclusion that article XX, section 22, of the California Constitution covers the law of the land and that Deering's General Laws, Act 3757, is not applicable, even though we believe the total interest charged is unconscionable.

■ At the time of maturity of the note on December 15, 1962, the balance including all interest to that date was $22,500. On June 28, 1963, the amount of the judgment was fixed at $22,500 plus costs and attorneys' fees. In plaintiff's appeal from the judgment for the first time it claims that it is entitled to interest after maturity of the note to the date of judgment at the same interest rate agreed upon in the note. This matter was not presented to the trial court. The plaintiff asked for no such interest in its complaint. The stipulation for submission of cause upon the agreed statement of facts between plaintiff and defendants makes no mention whatsoever of any interest due after maturity of the note to the date of judgment. This issue was not submitted to the trial court and in its findings and judgment prepared on the

stationery of the plaintiff no mention is made of any interest after maturity of the note.

It is generally understood, however, that under Civil Code section 3289 the plaintiff would have been entitled to interest after maturity to the date of judgment. (See *Casey* v. *Gibbons,* 136 Cal. 368 [68 P. 1032]; *Ansco Constr. Co.* v. *Ocean View Estates, Inc.,* 169 Cal.App.2d 235 [337 P.2d 146].) However, the record discloses that in this case no request for such relief was made before the trial court.

In *Dimmick* v. *Dimmick,* 58 Cal.2d 417, 422-423 [24 Cal. Rptr. 856, 374 P.2d 824], the court said: "It is settled that points not raised in the trial court will not be considered on appeal. [Citations.] This rule precludes a party from asserting on appeal claims to relief not asserted in the trial court. [Citations.]

".   .   .   .   .   .   .   .   .   .   .   .

"As stated in *Buck* v. *Canty,* 162 Cal. 226, 238 [121 P. 924], 'The case comes within the familiar rule that a judgment will not be reversed on appeal because of the failure of the lower court to give relief not embraced in the pleadings and which it was not asked to give, that is, in effect, for an error which the trial court did not make.' " (See also *Pack* v. *Vartanian,* 232 Cal.App.2d 466, 474 [42 Cal.Rptr. 729].)

The judgment is affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.

The petitions for a rehearing were denied September 27, 1965, and the petitions of all parties for a hearing by the Supreme Court were denied October 27, 1965.