[Civ. No. 5787.   Second Appellate District, Division One.—March 28, 1928.]

JAY PEET, Respondent, v. PEOPLE'S TRUST AND SAVINGS BANK (a Corporation) et al., Appellants.

Page & Hurt, Page, Nolan, Rohe & Hurt and Henry S. Dottenheim for Appellants.

Lee R. Taylor, C. A. Stutsman and D. B. Chapin for Respondent.

HAHN, J., *pro tem.*—This action was brought by the plaintiff to recover damages for the alleged conversion of a herd of cattle by the defendants. In a previous trial of the case judgment was rendered for the defendant People's Trust and Savings Bank, a corporation, which in that trial was the sole defendant in the case. Upon an appeal taken by the plaintiff the judgment was reversed in division two of this court. (*Peet* v. *People's Trust and Savings Bank,* 56 Cal. App. 46 [204 Pac. 413].)

Prior to the second trial, which resulted in a judgment for the plaintiff and which occasioned the present appeal, plaintiff filed an amended and supplemental complaint making the Hellman Trust and Savings Bank a co-defendant with the People's Trust and Savings Bank.

The original complaint was filed February 4, 1919, and the supplemental complaint on March 16, 1923. In this discussion we will refer to the amended and supplemental complaint as the complaint. Plaintiff alleges that on or about the twentieth day of April, 1918, he was the owner and in the lawful possession of 147 head of cattle, situate in Riverside County, of the aggregate value of $15,000, and that on said date the defendant People's Trust and Savings Bank unlawfully took possession of these cattle and converted them to its own use and benefit. The complaint further alleges that subsequent to the filing of the original complaint, to wit, on May 21, 1920, the People's Trust and Savings Bank executed with the Hellman Trust and Savings Bank two contracts, copies of which are set forth in the complaint; that the said agreements were entered into pursuant to the provisions of section 31 of the Banking Act of the state of California [Stats. 1909, p. 95], and by this arrangement the Hellman Bank acquired from the People's Bank all of the assets of its commercial and savings department, and as consideration therefor agreed to assume and pay its deposit liabilities; that by reason of the aforesaid transactions the plaintiff as creditor of the People's Trust and Savings Bank was deprived of recourse to any of the assets of said bank in order to satisfy its claim; also

that by the terms of said agreements the Hellman Bank assumed and became liable for plaintiff's claim for damages arising out of the alleged conversion.

The answer admits the execution of the contract set out in the complaint, but denies that by reason of said contracts or otherwise the Hellman Bank became in any way liable for plaintiff's alleged claim. Also, upon information and belief, the answer denies the ownership of the cattle in the plaintiff and denies the values placed upon the cattle in the complaint. Defendants also allege that plaintiff's claim did not arise out of the business of the commercial or savings department of the People's Bank, but rather out of the transactions of the trust department; that the Hellman Bank did not purchase either the business or assets of the trust department, nor did it assume any of its trust department liabilities. The case proceeded to trial before a jury and resulted in a verdict for the plaintiff in the sum of $3,000.

The presentation in statement and argument by appellants in their brief indicates that they rely upon four points for a reversal of the judgment. These may be stated as follows:

First: That there was in fact no conversion of the cattle by the defendants.

Second: That even if an officer or representative of the defendant corporations wrongfully took cattle belonging to the plaintiff, neither of the defendant corporations can be held liable for the tort of its agent or officer.

Third: That there was no competent evidence presented in the trial to support the findings of the jury that the cattle taken were worth the sum of $3,000.

Fourth: That if any legal liability attached to the appellant People's Trust and Savings Bank by reason of the acts of any of its officers, such liability cannot attach to the Hellman Trust and Savings Bank.

There is a marked conflict in the evidence on certain material matters involved in the case. There is, however, sufficient evidence to have justified the jury in accepting a view of the facts in the case which the following statement fairly portrays.

On September 1, 1917, and for several years prior thereto, the plaintiff was the owner of a herd of dairy cattle near Blythe, Riverside County. This herd consisted of a number of milk cows, and a lesser number of calves and heifers. On September 1, 1917, plaintiff, in order to secure the payment of a loan of $2,500 made by appellant People's Trust and Savings Bank to one Joseph W. Hopkins, executed a chattel mortgage to the People's Trust and Savings Bank covering 60 head of cows and 20 calves of plaintiff's herd. Prior to the spring of 1917 a portion of this herd was pastured on lands known as "Brown's slough," while the remainder of the herd, which were used in the production of milk, constituted plaintiff's dairy near Blythe. Some time in the spring of 1917 the dairy business not proving profitable, plaintiff turned all of his milk cows out to pasture with the remainder of his herd in Brown's slough. In February, 1918, plaintiff caused a round-up to be made of his cattle and found that he had 147 head, including his milk cows, young calves, several bulls, and some steers. All of his cattle were branded with his brands so as to distinguish them from other cattle then pasturing on the common range.

In April, 1918, J. O. Phillips, who was then assistant trust officer of the People's Bank in charge of the Blythe branch of the bank, under general instructions from J. C. Odell, president of the bank, to look after its affairs in the vicinity of Blythe, ordered all of plaintiff's cattle pasturing in Brown's slough rounded up and taken to a corral, where they were fed for several weeks and then shipped over to Arizona, where they were pastured for a number of months. Shortly after taking possession of the cattle, Phillips reported his having done so to Odell. Odell approved his action and counseled with him concerning the subsequent shipment of the cattle to Arizona. Phillips testified that at the time he took possession of the cattle he did not know whether the note was due or not; that he was moved to round up the cattle because he feared they would be destroyed by the overflow waters of the Colorado River. The fact is the note fell due by its terms on January 1, 1918, and at the time the cattle were rounded up had not been paid.

There was a marked dispute as to the number of cattle taken under Phillips' orders. Plaintiff claims practically all of his herd of 147 cattle were taken, while defendants contended only 57 were rounded up. It appears that Phillips' orders were to round up all of the herd marked with plaintiff's brands, and testimony was offered to the effect that none of the cattle with plaintiff's brands were left in Brown's slough after the round-up ordered by Phillips. It further appears that although plaintiff was living near Blythe, no notice of any kind was given him of the bank's intention to remove the cattle from Brown's slough, nor even later of its decision to ship the cattle to Arizona. There is some dispute as to when the bank officials notified plaintiff that they had taken possession of the cattle. In any event, it was after the cattle were shipped to Arizona.

It is admitted that Phillips and Odell had an interview with plaintiff in October, 1918, concerning the cattle, although again there is a dispute as to what was said in the conversation. Phillips testified that on this occasion Odell offered to return what was left of the herd (it appears without conflict that at this time some 20 to 25 head of cattle had died or were lost) to plaintiff if he would reimburse the bank for its outlay in rounding up the cattle and caring for them. This part of the conversation is denied by plaintiff. Conceding such a proposal was made, it could not be regarded as a good tender for the reason that a substantial portion of the herd taken could not be returned. It is interesting, although not necessarily important, to note that on October 7, 1918, some days prior to time of the proposal to return the cattle to plaintiff, Hopkins had paid in full the $2,500 note as security for which the chattel mortgage on the cattle had been given.

In any event, the cattle were retained in the possession of the People's Bank until the assignment of May, 1920, when the Hellman Bank evidently took over the cattle as a part of the assets of the People's Bank, for in October, 1920, one Carrol, then in charge of the activities of the Hellman Bank in Riverside County, sold the cattle remaining from the herd taken for $1,600. There is nothing in the record to indicate what disposition was made of this money.

With the foregoing facts in mind, we will now turn to a consideration of the points urged by appellants in the order of their presentation.

■ As to the first contention, which is urged as the most important of the issues involved, we are of the opinion that the evidence clearly shows a conversion of at least 57 head of plaintiff's cattle. There is evidence that would justify a finding that a larger number of cattle were rounded up and taken, but the admitted number, in our opinion, is sufficient to sustain the respondent's position. Unquestionably, the defendant People's Bank had the right under the terms of the chattel mortgage, there being a default in the payment of the note, to take possession of the mortgaged cattle in April, 1918, for the purpose of selling them in the manner provided by law. No further steps were taken by the People's Bank at any time to accomplish a sale of the cattle as provided by statute. When the Hellman Bank took possession of the assets of the People's Bank it evidently dealt with the cattle as though belonging to the bank, for no pretense of any kind was made by the Hellman Bank to sell the cattle under the provisions of law relating to mortgaged chattels. When the representative of the Hellman Bank sold the cattle the transaction was apparently that of an owner selling to a buyer.

Probably a complete answer to appellants' contention on this point is that the decision of this court on the first appeal established the law of the case on the question of conversion, and hence at this time there is no necessity for any discussion of this point. (*Peet* v. *People's Trust and Savings Bank,* 56 Cal. App. 46 [204 Pac. 413].)

■ It is next contended that even if the acts of Phillips in taking possession of the cattle and the ratification by Odell, the president of the bank, constituted a conversion, the People's Bank did not become liable, for these acts were in the nature of a tort, and a bank is not liable for the torts of its officers. There is no merit in this contention. Phillips and Odell were acting well within their scope of authority in taking the cattle for the purpose of protecting their loan to Hopkins. Their failure to proceed with the disposition of the cattle within a reasonable time in accordance with the provisions of the statute is what fur-

nished the basis for plaintiff's claim against the bank. (*Peet* v. *People's Trust and Savings Bank, supra.*)

■ As to the point urged, that there was no competent evidence to support the valuation of $3,000 put upon the cattle taken, we cannot agree with appellants. The evidence on this issue was in conflict, and while that offered on behalf of plaintiff was not as strong as usually is presented in cases of this character, it nevertheless was sufficient to support the jury's verdict.

■ The last contention presented by appellants, that in any event the Hellman Bank is not liable for the wrongful conduct of the officers of the People's Bank, is based upon the theory that the chattel mortgage was a transaction of the trust department of the People's Bank as distinguished from the savings and commercial departments; and, inasmuch as the contracts under which the Hellman Bank took over the affairs of the People's Bank related solely to the savings and commercial departments, the Hellman Bank cannot be affected by anything arising out of this particular transaction.

Unfortunately for appellants' theory, the evidence in the record does not support the view that the chattel mortgage was a part of the assets—particularly of the trust department. The note was made payable to the People's Trust and Savings Bank, and the chattel mortgage made to the People's Trust and Savings Bank, as mortgagee. In the absence of any testimony upon the point, it is a fair inference that the funds loaned to Hopkins were funds of the commercial or savings department. Furthermore, it clearly appears without conflict that Carrol, who was in charge of the Hellman Bank activities in Riverside County accomplishing the liquidation of the affairs of the People's Bank under the contracts of May, 1920, took possession of the cattle and sold them, taking the proceeds for such purposes as the Hellman Bank saw fit; and it would clearly lead to the conclusion that they were regarded by both banks as a part of the assets of the commercial and trust department of the bank.

To permit the Hellman Bank to take and retain possession of the proceeds derived from the sale of cattle which neither it nor the People's Bank had any right to the possession of

at the time of the sale, and relieve the bank from obligation to recompense the owner of the cattle for the wrong done, would do violence to the very primary considerations of justice.

For the reasons indicated the judgment is affirmed.

Conrey, P. J., and Houser, J., concurred.