[Civ. No. S. C. 2.   Second Appellate District, Division One.—April 30, 1937.]

SECURITY–FIRST NATIONAL BANK OF LOS ANGELES (a National Banking Association), Appellant, v. SPRING STREET PROPERTIES, INC. (a Delaware Corporation), et al., Respondents.

Gibson, Dunn & Crutcher, Keith Bullitt, Norman S. Sterry, H. F. Prince and Frederic H. Sturdy for Appellant.

E. O. Leake and J. J. Leake for Respondents.

DORAN, J.—This is an appeal from a judgment in favor of respondent Federated Realty Company, Ltd., in an action for declaratory relief wherein it was sought to have it adjudged that the defendants had no title to certain furniture and furnishings in the Alexandria Hotel, or that any title they, or either of them, held was subject and subordinate to the lien held by plaintiff, and to have the rights of the parties in and to said furniture and furnishings declared.

The facts, as shown in substance, express or implied, by the findings of the trial court, are, briefly, as follows: During May, 1927, Alexandria Hotel Realty Corporation, a corporation, was the owner of seven ground leases upon which was constructed the Alexandria Hotel, then operated as a hotel. At that time the Alexandria Hotel Realty Corporation leased the premises to E. C. Eppley and Charles B. Hamilton, and at the same time sold and transferred the furniture, furnishings and equipment of said hotel to said Eppley and Hamilton, taking back a chattel mortgage on said furniture, furnishings and equipment to secure the obligation of said sublease. The Alexandria Hotel Realty Corporation then issued bonds and, to secure the same, executed to the Security Trust & Savings Bank, appellant's predecessor in interest, as trustee, a trust indenture. By this trust indenture the Alexandria Hotel Realty Corporation pledged and hypothecated to said bank, as trustee, the seven ground leases above mentioned and also the sublease to E. C. Eppley and Charles B. Hamilton, as well as the chattel mortgage above mentioned.

Section 10 of article IV of the trust indenture provided as follows: "The Company (Alexandria Hotel Realty Corporation) covenants and agrees that it will at any time, upon request of the Trustee, make, do, execute, acknowledge and deliver all such further and other acts, deeds and things as shall be reasonably required to effectuate the intention of these presents and to assure and to confirm to the Trustee or its successors all and singular the property hereinbefore

described, and hereby intended to be granted, so as to render the same, and especially such portions thereof as shall be hereafter acquired by the Company or its successors, available for the security and satisfaction of the bonds secured hereby, according to the intent and purpose herein expressed.''

Section 4 of article IV of the trust indenture provided in part as follows: ''The Company covenants and agrees that this indenture now is and always will be kept a first lien (Excepting taxes or assessments due but not delinquent) upon all the property described or mentioned in the granting clauses hereof; that it will not voluntarily create or suffer to be created or to arise any lien or charge of priority to or preference over the lien of these presents upon the trust estate, or any part thereof, or upon the income thereof.''

The trust indenture further provided, by section 26 of article IV, that ''Any chattel mortgage, or other mortgage, given for the security of the performance of the Hotel Lease, or of any lease or sublease hereafter made, of any part of the premises herein demised, shall be deposited with the Trustee as additional security hereunder, and the Trustee is hereby empowered as the attorney in fact of the Company hereby irrevocably appointed for that purpose, to take all steps necessary to maintain said security in full force, and to foreclose said security in the event that a default should occur under the terms of said Hotel lease or of any sublease, but nothing herein shall be construed as requiring any affirmative action on the part of the Trustee with respect to the enforcement of any chattel mortgage or other lien or security deposited with it under the foregoing provisions, unless it is requested by twenty-five per cent (25%) in amount of the holders of bonds secured hereby.''

Concurrently with the execution of the aforesaid instruments, and as a part of the same transaction, said Alexandria Hotel Realty Corporation, at the request of the trustee, executed and delivered to said trustee an assignment of rents, which assignment provided, in part, as follows: ''Whereas under an Indenture made as of the 1st day of May, 1927, between the undersigned, Alexandria Hotel Realty Corporation and Security Trust & Savings Bank'' (given to secure bonds, etc.) ''it is provided that all rentals collected and/or payable to the undersigned, Alexandria Hotel Realty Cor-

poration, under the terms of said Sublease *shall be deposited with said Security Trust & Savings Bank, Trustee, under said Indenture aforesaid, upon the trusts and for the uses and purposes therein set forth.*

"Now Therefore for value received, the undersigned Alexandria Hotel Realty Corporation, hereby sells, assigns, transfers and sets over unto said Security Trust & Savings Bank, Trustee, as aforesaid, all rents, issues and profits to which it, as said Sublessor is or may hereinafter become entitled under and in accordance with the terms of said Sublease.

"*This instrument is not intended to be and shall not operate as a transfer of said Sublease itself other than the rents, issues and profits to be derived therefrom,* and the undersigned Alexandria Hotel Realty Corporation, the Sublessor shall continue to be liable and to perform and does hereby with said Assignee undertake and agree faithfully to perform each and all the covenants, undertakings and agreements assumed by it under the terms of said Sublease.

"The said Security Trust & Savings Bank is hereby constituted and appointed the true and lawful attorney of the undersigned Alexandria Hotel Realty Corporation, in its name, place and stead, to ask, demand, sue for, collect and receive, as such Trustee, each and all of said rents, issues and profits as they respectively become due and payable." (Italics added.)

Thereafter, Hamilton and Eppley assigned their interest in the above-mentioned sublease to the Alexandria Hotel Company (a different corporation and not to be confused with Alexandria Hotel Realty Corporation), which company thereafter operated the hotel. The interest of the mortgagor, to wit, the Alexandria Hotel Realty Corporation, was sold to Spring Street Properties, Inc., under an express acceptance by the purchaser of the terms, covenants and conditions of the trust indenture and pursuant to an agreement by the purchaser to perform all of the covenants and conditions imposed thereby on the mortgagor.

On September 29, 1932, at which time it is conceded that the Alexandria Hotel Company, the sublessee, was hopelessly insolvent, Spring Street Properties, Inc., cancelled the lease, took possession of the hotel and thereafter conducted and managed the operation thereof. Theretofore, however, to wit, on May 31, 1932, Spring Street Properties, Inc., had informed the trustee under the trust indenture that the sub-

lessee was in default and of the likely necessity of the cancellation by Spring Street Properties, Inc., of the lease. The trustee bank replied in a letter dated June 17, 1932, in substance, that the sublease could not be cancelled without the concurrence of the bank, as trustee under the trust indenture. Thereafter, to wit, on October 13, 1932, Spring Street Properties, Inc., in compliance with the law respecting the sale of mortgaged chattels, sold the property at public auction. No demand had theretofore been made on the trustee to foreclose the chattel mortgage either by sale or court action. Incidentally, no notice of the time and place of the sale was given to the trustee and in that connection there is evidence in the record that Spring Street Properties, Inc., did not desire the bank to know of the sale. The Federated Realty Company, which owned 40 per cent of the stock of Spring Street Properties, Inc., was the only bidder at the sale. The purchase price was not for cash but was paid by canceling a preexisting debt from Spring Street Properties, Inc., to Federated Realty Company.

It should be noted here that although the Alexandria Hotel Company had defaulted in its payment of the rents due under the sublease, nevertheless Spring Street Properties, Inc., had paid to the trustee the amount of the rentals reserved by the sublease so that there was, at the time of the cancellation thereof, no default on the part of Spring Street Properties, Inc., so far as its obligation under the trust indenture was concerned.

As hereinbefore stated, the foregoing recitation of facts is shown by the findings, in addition to which the court found specifically that Alexandria Hotel Realty Corporation pledged the sublease and chattel mortgage; that plaintiff was, prior to September 29, 1932, the pledgee of the lessor's rights under said sublease; that the rights of plaintiff as such pledgee were expressed in the trust indenture and not otherwise; that upon and after September 29, 1932, upon the cancellation and termination on that day of said sublease said chattel mortgage stood and remained as security only for the payment of rentals which had accrued prior to September 29, 1932; that Spring Street Properties, Inc., had paid plaintiff the full amount of rentals which had accrued under said sublease prior to September 29, 1932; that said chattel mortgage by its terms was given for the purpose of securing payment of the rent reserved in said sublease and for the prompt per-

formance of the covenants of said sublease; that on the 30th day of September, 1932, Spring Street Properties, Inc., paid to plaintiff the sum of $15,416.67, being the entire balance due to and including said date of cancellation; that Spring Street Properties, Inc., notified plaintiff on said date that said lease had been cancelled and that Spring Street Properties, Inc., had taken over and was in possession of the premises and that therefore there would be no further rental payments due under the sublease but that its (Spring Street Properties, Inc.) own obligations under the trust indenture would be discharged; that thereafter and until March, 1933, Spring Street Properties, Inc., paid all monies due to plaintiff under said trust indenture; that plaintiff had acquiesced in and consented to the termination of the sublease.

As a conclusion of law, the trial court found that plaintiff had no lien upon the chattels described or referred to in the chattel mortgage; that at the time of the sale, to wit, on October 17, 1932, of the personal property covered by the chattel mortgage, there was no default under the terms of the trust indenture, and neither Spring Street Properties, Inc., nor Alexandria Hotel Company was under any obligation to pay plaintiffs any monies whatever; that the sale of the chattels was valid and that Federated Realty Company, Ltd., became the owner of the property covered by said chattel mortgage; and that plaintiff had no right, title or interest therein nor lien thereon. The trial court further concluded as a matter of law that plaintiff was estopped to deny that the sublease was cancelled and terminated, and was estopped to deny the right of Spring Street Properties, Inc., to sell the personal property described and referred to in the chattel mortgage, and was therefore estopped to deny that Federated Realty Company, Ltd., was the owner of said personal property, as well as estopped to assert any right, title or interest therein or any lien thereon.

It is appellant's contention: First, that a pledgor of a lease, chattel mortgage or other chose in action cannot, without the consent of the pledgee, cancel such lease or foreclose such mortgage or exercise any other right or remedy given the pledgor by the pledged instrument; second, that under the provisions of the trust indenture and the unconditional acceptance thereof by Spring Street Properties, Inc., it was estopped to assert any rights so to do or to attempt to cancel the sublease or by any act or means take out from under the

lien of the trust indenture the hotel lease or the lien of the chattel mortgage upon the furniture; third, that Federated Realty Company, Ltd., owning 40 per cent of the stock of Spring Street Properties, Inc., and having the same officers and attorneys as Spring Street Properties, Inc., was charged with knowledge of the entire situation, and could not obtain title to the furniture and furnishings free and clear of the lien of the chattel mortgage held by the trustee; fourth, that even if the trustee could legally be estopped to assert its right as trustee to any portion of the trust estate, the record is destitute of any act or conduct on the part of the trustee which constitutes such estoppel; and fifth, that plaintiff, as trustee of an express trust, was incapable legally of consenting to the abstraction from the trust estate of any part of its *corpus,* or of being estopped to enforce any of the rights given it for the benefit of the bondholders, and especially could not be estopped to enforce such rights as against defendants in this case who dealt with it with full knowledge that it was a trustee and that the hotel lease and chattel mortgage had been pledged with it, not for its own use or benefit, but for the benefit and protection of the bondholders.

It is respondents' contention, on the other hand, that notice of all actions taken by Spring Street Properties, Inc., was given to the trustee and that they were acquiesced in by the trustee, and that Spring Street Properties, Inc., was the only one who had the right to enforce the provisions of the sublease or to terminate same for a violation of the provisions thereof.

It is further contended by respondents that Alexandria Hotel Realty Corporation did not make an absolute assignment of the sublease to the trustee; that the provision in the instrument assigning rents, to wit, "This instrument is not intended to be and shall not operate as a transfer of said Sublease itself other than the rents, issues and profits to be derived therefrom" was a modification of the trust indenture to the extent that no outright assignment of the lessor's interest under the sublease was made or intended to be made.

Respondents' contention last mentioned is untenable, first, because the court expressly found to the contrary; and, second, construing the assignment in the light of the terms of the trust indenture, the clause in question, namely, "This instrument is not intended to be and shall not operate as

a transfer of said sublease" is obviously but an attempt to make clear what otherwise might be ambiguous, and merely emphasizes the exclusive purpose of the instrument. By the terms of the trust indenture the sublease had already been pledged with the trustee and in no sense could the trust indenture be held to have been modified or limited by the above-quoted portion of the instrument purporting to assign only the rents.

Likewise is respondents' contention untenable that "notice" bears any relevancy to the controversy. In this connection Spring Street Properties, Inc., several times notified plaintiff of its intention to cancel the lease, to which plaintiff replied, in one communication, under date of June 17, 1932, as follows: "After carefully considering the various documents relating to this transaction we have concluded that this sublease may not be cancelled without the concurrence of this Bank as the Trustee under the Trust Indenture of the Alexandria Hotel Realty Corporation." Thereafter, on June 22d, Spring Street Properties, Inc., in a letter to plaintiff reasserted its right to cancel the sublease, accompanied by the warning that any interference by the trustee would be regarded as an invasion of the rights of Spring Street Properties, Inc., for which the trustee would be held responsible. The letter concluded with the paragraph: "We are giving you this notice pursuant to your request therefor, and if we do not receive your immediate reply, will assume that you concur in our interpretation of our rights in the premises." To this letter plaintiff made no reply. Such a notice, or any notice, to the trustee of an intention to cancel the sublease manifestly could not alter the terms of the trust indenture, which trust indenture definitely determined the rights of the bondholders, as well as the authority and duty of the trustee; moreover, the same trust indenture fixed the rights and authority of Spring Street Properties, Inc., in the premises. The failure to reply to such a letter pursuant to the terms thereof or to the threat therein contained, or at all, is of no evidentiary value. Such failure binds the addressee to no course whatever nor does it operate as an estoppel. Silence, under such circumstances, is never the equivalent of consent; such a doctrine would place the whole world at the mercy of letter-writers.

Respondents' claim that plaintiff had acquiesced in and consented to the termination of the sublease was sustained

by the trial court. With respect to this question, however, there appears to be a conflict in the testimony.. On the one hand there is the undisputed fact that the trustee had written to Spring Street Properties, Inc., in substance that the sublease could not be cancelled without the concurrence of the trustee. On the other hand there was testimony by two witnesses, one Mr. Gause and a Mr. Leake, on behalf of respondents, that Mr. Nossaman, trust officer for the bank, had declared in their presence and in the presence of a Mr. Hogan, with respect to the cancellation of the lease, "Well, the way matters have gone up to the present it looks like the only thing to do and to go ahead and do it." (Both Mr. Hogan and Mr. Nossaman denied that such statement was made by Mr. Nossaman.) The testimony just quoted appears to be the only evidence in the record to support respondents' claim as well as the court's finding that plaintiff had consented to the cancellation of the lease. It was in this connection that the trial court concluded as a matter of law that the trustee was estopped to deny that the sublease was cancelled and terminated, as hereinbefore more particularly set forth. Although at most it appears to be but an expression of opinion, whether the above testimony in regard to the alleged statement of Mr. Nossaman was the equivalent of consent is relatively unimportant, for, under no circumstances in the light of the record, could it have the legal effect of an estoppel, and in that same regard, therefore, the court's conclusion that an estoppel occurred is totally unsupported by the evidence. Spring Street Properties, Inc., had repeatedly theretofore declared its intention to cancel the lease and there is nothing in the record to even suggest that it had acted upon the alleged statement of Mr. Nossaman. Obviously such a situation lacks the essential elements of estoppel. (Subd. 3, sec. 1962, Code Civ. Proc.; *Biddle Boggs* v. *Merced Min. Co.*, 14 Cal. 279, 368; *City of San Diego* v. *Cuyamaca Water Co.*, 209 Cal. 105, 149 [287 Pac. 475]; *Hammond Lumber Co.* v. *Weeks*, 105 Cal. App. 315, 319 [287 Pac. 573].)

■ Referring again, but with more particularity, to the cancellation of the sublease and the sale of the property secured thereby, in addition to section 4 of article IV of the trust indenture, above quoted, said trust indenture further provided, in section 3 thereof, as follows: "The Company (Alexandria Hotel Realty Corporation) covenants and agrees that all business in connection with the trust estate will be

continuously carried on and conducted in an efficient manner, and that the trust estate will be cared for, maintained, preserved and kept in thorough repair, working order and condition, so that at no time shall the efficiency thereof be or become impaired.'' Section 3, just quoted, is significant for it should be noted that the furnishings of the hotel were not a part of the trust estate. Manifestly, the business in connection with the trust estate could not be continuously carried on and conducted in an efficient manner, and the trust estate cared for, maintained, preserved and kept in thorough repair, working order and condition unless the hotel was adequately furnished and a going concern. A failure to preserve such condition would materially impair the trust estate. Whether the mortgagor, therefore, could cancel the sublease, foreclose the chattel mortgage and sell out the furnishings of the hotel under the foreclosure, was of vital importance to the trustee and the bondholders whom such trustee represented. And it was the pledge of the sublease and the chattel mortgage with the trustee, as a part of the security for the bonds, that gave to the trustee the control of the hotel furnishings as such security, without which the total securities constituting the *corpus* of the trust would have been encumbered with a perpetual hazard.

By the pledge with the trustee of the sublease and the chattel mortgage, the risk in this regard was reduced to a minimum, a condition upon which the bondholders had a right to rely, for it is the law that ''When the owner of securities pledges them to secure the payment of his own debt, he impliedly transfers the right to the remedies which will make the securities available for the payment of his debt in case of his own default. The pledgee of property has the control of it for the time being, and he represents not only his own interest, but that of the pledgor, in taking any proper action for the preservation of it and the collection and care of its proceeds''. (21 R. C. L. 666, sec. 29.) Spring Street Properties, Inc., was without right, therefore, to foreclose the chattel mortgage and to attempt thereby to enforce the pledged security. Such right was exclusively in the pledgee. (*Works* v. *Merritt,* 105 Cal. 467 [38 Pac. 1109]; *Puckhaber* v. *Henry,* 152 Cal. 419, 425 [93 Pac. 114, 125 Am. St. Rep. 75, 14 Ann. Cas. 844]; *Gilman* v. *Curtis,* 66 Cal. 116, 117 [4 Pac. 1094]; *Bridge* v. *Connecticut Mutual Life Ins. Co.,* 167 Cal. 774, 777 [141 Pac. 375].)

■ It is no defense to the action of Spring Street Properties, Inc., that the chattel mortgage was given only to secure the rents due under the sublease and that at the time of the cancellation of the sublease there was no default on the part of Spring Street Properties, Inc., so far as concerned its obligations under the trust indenture. The fact remains, and it clearly is decisive of the controversy herein, that the sublease and chattel mortgage were *pledged* at the time Spring Street Properties, Inc., conducted the foreclosure sale.

Nor is it any defense that Spring Street Properties, Inc., would have been left without a "remedy". If such was the fact, it was because the "remedy" was relinquished when the sublease and chattel mortgage were pledged. Under the circumstances, the course to pursue was for the trustee to determine, who, as agent for the bondholders, and by virtue of the terms of the trust indenture, was, unless requested by the bondholders as the indenture provided, impliedly vested with the power to determine questions likely to arise in the administration of the trust estate. In this regard, so far as the interest of the bondholders was concerned, the advisability of canceling the lease, and thereafter the advisability of foreclosing the chattel mortgage, manifestly presented two questions entirely different in the effect of each on the value of the bonds. The lease might have been cancelled without necessarily jeopardizing the trust, whereas the foreclosure of the chattel mortgage and the removal of the hotel furnishings might, and indeed did, as the record herein appears to indicate, virtually complete the destruction of the trust estate. Such problems were of vital concern to the trustee. Whether the result would have been any different, if the right to foreclose or otherwise enforce the pledged security had remained in the trustee undisturbed, is beside the issue. The assumption of those rights by the pledgor was without legal sanction and the sale under the attempted foreclosure was, therefore, void.

Respondents point out that having taken possession of the chattels described in the mortgage, Spring Street Properties, Inc., would have been responsible for conversion for failure to sell the chattels within a reasonable time, citing in support of such rule, *Peet* v. *People's Trust etc. Bank,* 56 Cal. App. 46 [204 Pac. 413], *Peet* v. *People's Trust etc. Bank,* 90 Cal. App. 436 [266 Pac. 300], and *Blodgett* v. *Rheinschild,* 56

Cal. App. 728 [206 Pac. 674]. Assuming the rule to be as stated, it is not applicable to the case at bar for such rule obviously applies to unqualified pledges. The authorities cited do not hold that the parties to a chattel mortgage agreement are precluded altogether from fixing the terms and conditions thereof.

For the foregoing reasons the judgment appealed from is reversed.

Houser, P. J., and York, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 28, 1937.