[Civ. No. 32599. Second Dist., Div. One. Mar. 10, 1969.]

U. S. INDUSTRIES, INC., Plaintiff and Appellant, v. EDMOND J. VADNAIS et al., Defendants and Appellants.

Paul, Hastings, Janofsky & Walker, Oliver F. Green, Jr., and William B. Campbell for Plaintiff and Appellant.

Monteleone & McCrory, David P. Yaffe, Mize, Larsh, Mize, Hubbard & Baxter and Royal E. Hubbard for Defendants and Appellants.

LILLIE, J.—Plaintiff (referred to hereinafter as "USI") appeals from portions of a judgment made and entered after motions pursuant to section 631.8, Code of Civil Procedure, which (1) denied any recovery for breach of a written agreement to pay the full contract price for steel pipe and other items delivered by it to defendant Vadnais for specified public work and (2) determined that Vadnais and other defendants were not liable to plaintiff for the purchase price of 5,112 feet of pipe rejected by one codefendant (Woolley), who was also exonerated from any liability under a separate cause of action of the complaint as amended alleging tortious interference with the USI-Vadnais contract. Finally, the judgment awarded attorney's fees in the sum of $6,500 to defendant Fidelity & Deposit of Maryland, surety on Vadnais' bond (Gov. Code, § 4207).

Defendant Vadnais partnership and its partners have also appealed, from that portion of the judgment denying them recovery on their counterclaims by reason of their failure to produce any evidence in support thereof. It is apparent that this appeal is purely precautionary in nature and intended to protect their right to seek affirmative relief from plaintiff

should the portions of the judgment challenged by USI be reversed.

The public work or improvement here involved consisted of a water distribution system servicing certain communities in Orange County by means of an underground pipeline approximately 6 miles long and of varying depth and direction, plans and specifications for which were drawn by defendant Woolley, a consulting engineer. Vadnais was the successful bidder on the project advertised by defendant West Orange County Water Board. Previously, plaintiff had submitted a written proposal to Vadnais to supply the pipe required for the project; on May 9, 1963, Vadnais accepted the proposal, being the contract herein. It called for the manufacture and delivery of approximately 31,473 feet of pipe having a value of $447,403; because of later developments, when suit was commenced there assertedly was an unpaid balance of $105,675. Under the agreement USI promised to commence delivery to the jobsite about 55 days later (July 3, 1963) at the rate of 5,000 feet per week, thus delivery should have been completed within seven weeks thereafter (August 21, 1963). Construction having been thus delayed, the trial court found that said delay was not the result of matters beyond plaintiff's reasonable control; to the contrary, it concluded that the delay was directly and proximately caused by the wilful refusal of plaintiff, throughout the months of May, June and July, 1963 to manufacture said pipe and fittings in accordance with the plans and specifications for the project. It further determined that instead of so doing, plaintiff concentrated its efforts during that period on attempting to get defendant Woolley to alter the plans and specifications to enable plaintiff to manufacture the pipe and fittings more conveniently and cheaply. As a result, according to additional findings, Vadnais was prevented from commencing the project during the months of July and August 1963, to its substantial damage; plaintiff did not perform, substantially or otherwise, the terms and conditions of the contract by it to be performed and such failure of performance was not caused by any act of Vadnais. While still other findings were made covering the refusal to accept the additional 5,112 feet of pipe manufactured by plaintiff and further disposing of other issues involving Vadnais and its codefendants, we first discuss the problems incident to the question of substantial performance.

Preliminarily, there are settled principles governing the scope of review where the challenged judgment is one rendered pursuant to section 631.8, Code of Civil Procedure. Thereunder "[t]he court as trier of the facts shall weigh the evidence and may render a judgment in favor of the moving party, in which case the court shall make findings. . . ." Accordingly, "[i]f the motion is granted, [its] findings are entitled to the same respect on appeal as any other findings and are not reversible if supported by substantial evidence. [Citations.]" (*Greening* v. *General Air-Conditioning Corp.,* 233 Cal.App.2d 545, 550 [43 Cal.Rptr. 662].)

The evdence reveals the following relevant facts: Before submitting its bid to Vadnais, USI had purchased a computer with which experimental use was made to determine the various sizes, shapes and pieces of pipe required to construct a given pipeline. Although it could have been programmed so to do, the USI computer was unable to compute certain "flanged fittings" required by the plans and specifications for the project. We briefly explain the use of such fittings—the pipeline comprised many sections; when it made a turn, either vertical or horizontal, the plans and specifications required an elbow flanged at both ends; the straight pieces of pipe adjoining the elbow also required flanging at both ends so that they could be bolted thereto. Because the USI computer was not programmed to compute these "flanged fittings" and because the pipeline was designed in such a way that the design could not be run through the computer, some of the flanges required by the plans and specifications had to be deleted. After the bids were opened and Vadnais ordered the pipe from USI, the latter endeavored to obtain the consent of defendant Woolley, the consulting engineer for defendant Water Board, to such deletions. Woolley refused. There then followed a series of exchanges, both oral and written, continuing from the latter part of May 1963 through August 30, some three months later. On July 26, 1963, Vadnais wrote USI regarding West Orange County Water Board Feeder No. 2 as follows: "We are seriously concerned about your complete failure to date to adhere to our agreed upon delivery schedule for pipe for the above referenced project. You will recall that on May 24, 1963, you agreed to commence the delivery of pipe to the job on July 22, 1963 and continue to deliver at the rate of 5,000 feet per week thereafter. As of this date no pipe has been delivered to the job and we have no definite commitment from you as to when delivery will commence.

"This delay has already caused a loss to us because we have equipment standing by ready to commence construction operations which of course cannot be started until pipe is delivered. In addition, the delay threatens to throw the job into the winter months when rainy weather will hamper our construction operations and increase our costs. Our contract with the Water Board contains a liquidated damages clause, and the Consulting Engineer for the Board advised us by letter dated July 17, 1963, a copy of which was sent to you, that at that time there were thirty-two days delay for which we would be held responsible.

"We will of course hold you directly responsible for any and all losses which we sustain as a result of your failure to perform according to our subcontract agreement.

"We understand that now, after several weeks of discussions with the Consulting Engineer over the number and locations of pipe flanges, you are considering manufacturing said flanges yourself. We wish it distinctly understood that if this change in procedure involves any additional delay in meeting your delivery schedule, we will sustain additional losses for which we will hold you strictly accountable.

"We urgently request that you expedite the manufacture of the pipe required by our contract, and that you immediately advise us as to when we can expect delivery to commence."

- On July 29, "in confirmation of our telephone conversation on July 26," USI wrote to Vadnais, a copy of such communication being sent to Woolley, expressing plaintiff's agreement to eliminate certain flanges specified by Woolley and stating, among other things, that production would start on July 29. The letter concluded as follows: "We trust that all parties are now in agreement and that those conditions set down by Mr. J. A. Woolley have been complied with. Please advise should you have any questions." During the next 10 days USI's calculations and shop drawings were submitted and resubmitted for correction to Woolley who finally approved them on August 7. The first pipe was shipped to the jobsite on August 30, 1963, although USI had originally contracted to start such shipments on July 3.

Recently the doctrine of substantial performance was once again set forth by our Supreme Court: "Where a person agrees to do a thing for another for a specified sum of money, to be paid on full performance, he is not entitled to any part of the sum until he has himself done the thing he agreed to do, unless full performance has been excused, prevented or

delayed by the act of the other party." (*Lowy* v. *United Pac. Ins. Co.,* 67 Cal.2d 87, 92 [60 Cal.Rptr. 225, 429 P.2d 577].)

■ Applied to building contracts, "where the owner has taken possession of the building and is enjoying the fruits of the contractor's work in the performance of the contract, if there has been a substantial performance thereof by the contractor in good faith, if the failure to make full performance can be compensated in damages to be deducted from the price or allowed as a counterclaim, and if the omissions and deviations were not wilful or fraudulent and do not substantially affect the usefulness of the building or the purpose for which it was intended, the contractor may, in an action upon the contract, recover the amount of the contract price remaining unpaid, less the amount allowed as damages for the failure of strict performance." (*Lowy* v. *United Pac. Ins. Co., supra,* pp. 92-93.)

■ While plaintiff USI was in the strict sense a materialman, not a building contractor, it is not contended that the legal principles stated above are not likewise here controlling; nor is there any dispute that plaintiff had the burden of showing that it substantially performed. In an endeavor to meet that burden, and as part of its case-in-chief, plaintiff introduced the July 26 letter from Vadnais, quoted above, which was received as its Exhibit 8. Having been received without any limitation as to its purpose, it is contended by Vadnais that such communication constitutes sufficient evidence to support a finding as to the truth of the statements therein made. (*Patrick J. Ruane, Inc.* v. *Parker,* 185 Cal.App.2d 488, 494 [8 Cal.Rptr. 379].) As indicated in said communication, Vadnais assertedly had already suffered a loss by maintaining equipment readily available for the commencement of operations as soon as the pipe was delivered; it was further therein indicated that additional damage would be sustained if the delay continued the job into the winter months. Admittedly delivery of all material was not completed until February of the following year (1964), and Vadnais properly points out that "standby costs and servicing are compensable in appropriate circumstances." (*Bowman* v. *Santa Clara County,* 153 Cal.App.2d 707, 714-715 [315 P.2d 67].) Although it counterclaimed for damages approximating $190,000,[1] Vadnais declined to put on any evidence thereof

---

[1] Of such total sum, $100,000 represented additional expenses caused by plaintiff's "sporadic" deliveries, while the balance consisted of $89,894.23 due Vadnais but withheld by defendant Water Board following the filing of a stop notice claim. (Code Civ. Proc., § 1190.1.)

when invited by the court to do so. Thus, based principally on the matters set forth in the above letter, the motions under section 631.8, Code of Civil Procedure, were granted and findings made that plaintiff did not perform or substantially perform its contract, that it materially breached said agreement, that as a proximate result thereof Vadnais was prevented from commencing the project to its ''substantial damage'' (but in a sum wholly unspecified), that plaintiff was paid by Vadnais for pipe and fittings delivered to the project in the sum of $341,728.51, and that there is no evidence that Vadnais obtained any benefit from delivery of the pipe and fittings in excess of the amount paid. From this the court concluded that plaintiff, not having performed or substantially performed the contract, is not entitled to any amount thereunder due for pipe delivered to Vadnais; plaintiff did not prove or offer to prove that the amount due it exceeded the amount of damages caused to Vadnais by its breach; and Vadnais, having presented no evidence in support of its counterclaim, is not entitled to any recovery against plaintiff.

As a consequence of the tactics adopted below, we do not have the case usually presented by actions involving the doctrine of substantial performance. As Corbin points out, ''Generally the plaintiff alleges full performance by himself . . . and his testimony tends to prove such full performance. The defendant denies the plaintiff's allegations, asserts a substantial breach, and counterclaims for damages. Thus are raised the issues, full performance or not, substantial performance or not, and the amount of injury suffered. If it is found that each party has a right against the other and each has committed a wrong, the court must liquidate the claims in money, deduct the smaller and give judgment for the balance. If the damages payable for plaintiff's breach exceed the unpaid balance of the price, the plaintiff gets judgment for nothing.'' (3A Corbin, Contracts, § 709, pp. 337-338.) Here absent any evidence as to the amount of damages sustained by Vadnais, it became impossible to strike any balance, whether it favored plaintiff or Vadnais.

The question then is: Who has the burden of proving such damages?[2] The quotation from Corbin, *supra* (§ 709), is preceded by the following statement: ''It would seem that each one must state his own claim, and must allege and prove the

[2]Evidence Code, sections 500, 550; see also California Evidence Code Manual pp. 79-80.

facts that constitute the other's breach and that create his own right. There is no very strong reason for requiring the plaintiff to prove that the defendant has any counterclaim or its amount.'' In a subsequent section, after reference to authorities favoring the view just noted, it is further stated: ''The reasons against this rule are pretty strong. The defendant, also, is making an affirmative claim. He did not have to bring the first action because, fortunately for himself, he has not yet paid the contract price in full. In practically every case, however, he has withheld too much, and to that extent is in the wrong. There is as much reason for making him prove his injury and its extent as for requiring the contractor to prove his asserted claim. In some cases, the court has indicated that the burden of establishing the counterclaim is on the defendant.'' (Corbin, Contracts, § 710, pp. 340-341.)

Vadnais contends, however, that the issue of burden of proof becomes immaterial in the light of the finding that plaintiff performed neither substantially nor at all—''Plaintiff did not perform or substantially perform the terms and conditions of said written contract on its part to be performed.'' (Finding No. 10.) Such finding overlooks evidentiary items to the contrary, as does the further finding (No. 9) which states, in pertinent part, that ''there is no evidence that defendant Vadnais obtained any benefit from the delivery of said pipe in excess of the amount so paid.'' Introduced as part of plaintiff's case (plaintiff's Exhs. 10, 11) were customer ledger cards (with supporting invoices) and accounts receivable ledger cards (with supporting invoices) for the account of Vadnais; these two exhibits show deliveries to Vadnais of pipe and related materials having a total contract price of $447,403.69. Although Vadnais concedes that it was billed for the above amount, it admittedly paid only 76.4 percent thereof, retaining the balance ($105,675.18) as a set-off to reimburse itself for the damages it assertedly incurred as a result of plaintiff's breaches of contract. In support of its declination to offer any evidence on the counterclaim, Vadnais now argues that plaintiff made no effort to prove that the value of the pipe and fittings thus delivered and received exceeded the damages set up in Vadnais' crossdemand. It appears, however, that the contract price was quoted as a unit price per foot for the various types of pipe described in the agreement. Too, through subsequent correspondence it was expressly agreed that the job would be billed by plaintiff on a unit price per foot basis, rather than as a lump sum; this is

reflected by a purchase order signed by Edmond Vadnais on June 11, 1963 (plaintiff's Exhibit 6) and a copy of a letter, dated June 19, 1963, to Vadnais (plaintiff's Exhibit 7).

■ "Where a contract to deliver property and render services has been performed and the purchaser fails to comply with the terms of the contract, the contract price is the measure of damages, as it accurately represents the extent of the vendor's loss [citation]." (*Union Liquors, Inc.* v. *Finkel & Lasarow, Inc.*, 44 Cal.App.2d 706, 710 [113 P.2d 19].) To the same effect is *Johnson* v. *Besoyan,* 85 Cal.App.2d 389, 393 [193 P.2d 63], citing section 1783, Civil Code, which provides in part that "(1) Where, under a contract to sell or a sale, the property in the goods has passed to the buyer, and the buyer wrongfully neglects or refuses to pay for the goods according to the terms of the contract or the sale, the seller may maintain an action against him for the price of the goods."

■ The value of the pipe and other subject materials having thus been satisfactorily established, and delivery having been admitted by Vadnais, Corbin's formula (§ 709, *supra*) would seem to have been complied with on plaintiff's part. So too, it likewise appears, do the facts fit the rule of the Restatement (Rest., Contracts, § 357, pp. 623-624) which declares in pertinent part as follows: "Where the defendant fails or refuses to perform his contract and is justified therein by the plaintiff's own breach of duty or non-performance of a condition, but the plaintiff has rendered a part performance under the contract that is a net benefit to the defendant, the plaintiff can get judgment . . . for the amount of such benefit in excess of the harm that he has caused to the defendant by his own breach . . . if (a) the plaintiff's breach or non-performance is not wilful and deliberate; or (b) the defendant, with knowledge that the plaintiff's breach of duty or non-performance of condition has occurred or will thereafter occur, assents to the rendition of the part performance, or accepts the benefit of it, or retains property received although its return in specie is still not unreasonably difficult or injurious." Additionally, the term "net benefit" is defined in the above section as follows: "The measure of the defendant's benefit from the plaintiff's past performance is the amount by which he has been enriched as the result of such performance unless the facts are those stated in Subsection (1b), in which case it is the price fixed by the contract for such part performance, or, if no price is so fixed, a ratable proportion of the total contract price."

But Vadnais again points to its letter of July 26 and argues that a portion thereof is reasonably susceptible of the inference (which was drawn by the court) that there were substantial deviations by plaintiff from the delivery terms agreed upon; it assertedly follows, therefore, that plaintiff did not substantially perform. We have no quarrel with the determination reached in *Patrick J. Ruane, Inc.* v. *Parker, supra,* 185 Cal.App.2d 488, 494 (relied on by Vadnais) that two letters, written six months apart and received in evidence without any limitation on their purposes, sufficiently supports a finding as to the truth of the statements therein made. But plaintiff, as shown above, almost immediately replied to the July 26 letter, concluding with the request that Vadnais "advise [plaintiff] should you have any questions." Parenthetically, even when there has been no response at all it has been observed that there may be many reasons (other than a belief in the truth of the statements made by the letter) why a person does not reply thereto: "Silence, under such circumstances, is never the equivalent of consent; such a doctrine would place the whole world at the mercy of letter-writers." (*Security-First Nat. Bank* v. *Spring Street Properties, Inc.,* 20 Cal.App.2d 618, 626 [67 P.2d 720].) True, plaintiff in its reply did not deny that the delay complained of "[had] already caused a loss to us" because of matters thereinafter specified; but it is noteworthy that the extent of such loss, substantial or otherwise, is not stated, and Vadnais in relying on this same communication as supportive of the finding (No. 6) that plaintiff "materially and substantially and wilfully breached said written contract" by untimely delivery of the materials contracted for. There is this further statement in the same letter which plaintiff likewise did not deny: "In addition, the delay threatens to throw the job into the winter months when rainy weather will hamper our construction operations and increase our costs." Again, it is noteworthy that no evidence was produced, save for the *ipse dixit* quoted above, that costs were actually increased as a result of weather conditions, nor is there any showing whatever whether the normal winter rains commenced before final delivery of the materials on or about February 5, 1964.

Plaintiff having thus replied to the Vadnais inquiry that manufacture of the pipe be expedited and that "you immediately advise us when we can expect delivery to commence," such deliveries were thereafter made, albeit belatedly, and accepted for a period of approximately five months; further-

more, Vadnais paid the contract price as invoiced, for almost four-fifths of the pipe delivered. Clearly this was an election of its remedies by Vadnais to "keep the contract alive, for the benefit of both parties, being at all times ready and able to perform." (*Oliver* v. *Campbell,* 43 Cal.2d 298, 302 [273 P.2d 15].) Nevertheless Vadnais now insists that these belated deliveries support the further finding that they constitute intentional and wilful deviations from the subject contract despite any determination as to the precise detriment thereby suffered except, as found, that it was "substantial." In *Lowy, supra,* 67 Cal.2d 87, 92-93, the court pointed out (after reference to other elements) that substantial performance has been achieved "if the omissions and deviations were not wilful or fraudulent *and* do not substantially affect the usefulness of the building or the purpose for which it was intended. . . ." (Italics added.) There must thus be a combination of these two factors: (1) substantial omissions or deviations resulting from (2) wilful or intentional action (or inaction) on the part of the party claiming that he substantially performed. In the present posture of the record, as noted above, no sufficient showing was made by Vadnais that plaintiffs deviations were substantial; the same determination must be made with respect to the finding that plaintiff's untimely delivery of the materials was intentional or wilful. The pertinent finding (No. 7) declares in part that "Said delay was directly and proximately caused by the willful refusal of Plaintiff, throughout the months of May, June and July of 1963, to manufacture said pipe and fittings in accordance with the plans and specifications for the project. Instead of so doing, Plaintiff concentrated its efforts during that period on attempting to get Defendant WOOLLEY to alter the plans and specifications to enable Plaintiff to manufacture said pipe and fittings more conveniently and more cheaply." Again the letter of July 26 becomes relevant to a determination of this additional issue. After reference to "several weeks of discussions [by plaintiff] with the Consulting Engineer [Mr. Woolley] over the number and locations of pipe flanges. . . ." the communication concludes with the request that the manufacture of pipe be expedited and that Vadnais be immediately advised when delivery can commence. If, as appears, plaintiff thereafter had several meetings with Woolley to whom corrected calculations and drawings were submitted, it did so at Vadnais' invitation—no other construction is reasonably deducible from the subject letter taken as a whole;

thus, plaintiff was permitted to go ahead and finish the work as it did with Vadnais' implied consent. Furthermore, there is no evidence of any sort that plaintiff had the ability to deliver pipe at any time sooner than it did, that plaintiff had any intention of doing anything other than make delivery as soon as it possibly could or that plaintiff knew that its request to eliminate flanges would necessarily delay the project. This comment seems persuasive here: ''A breach may be committed knowingly and yet not be wilful and deliberate. Such is the case if it is the result of mere negligence or error of judgment or mistake of fact or law. . . .'' (Rest. Contracts, § 357, p. 626(e).)

This brings us to matters further complicating the determination below. The trial court denied Vadnais recovery on its counterclaim, from which appeal is taken, because of failure of supporting proof, yet it found that Vadnais suffered ''substantial'' detriment from plaintiff's omissions and deviations. Plaintiff objected to this latter finding (No. 8) and requested special findings pursuant to section 634, Code of Civil Procedure; thereunder ''the [appellate] court shall not infer that the trial court found in favor of the prevailing party on such issue. . . .'' It is elementary that findings are required on all material issues raised by the pleadings and evidence unless they are waived, and if the court renders judgment without making findings on all material issues, the case must be reversed. Too, a corollary to this rule is that findings should be definite and certain (*Sharove* v. *Middleman,* 146 Cal.App.2d 199, 201 [303 P.2d 900]), and ''Where the findings are contradictory and irreconcilable with respect to matters which are material to the merits of the case, and the determination of them, one way or the other, is essential to the correctness of the judgment, the judgment cannot stand.'' (*Estate of Harvey,* 164 Cal. App.2d 330, 334 [330 P.2d 478].)

The finding that Vadnais was substantially damaged is entirely inconsistent with the judgment; certainly if this defendant had been ''substantially'' damaged in any way, it would have been entitled to judgment on its counterclaim. Also, in light of the mass of evidence produced, plaintiff was entitled to a more precise finding than ''substantial'' respecting the various issues at bar. For the reasons above set forth, we conclude that the portion of the judgment denying plaintiff recovery for pipe delivered to Vadnais was erroneously rendered.

■ The second portion of the judgment from which plaintiff has appealed pertains to pipe and related materials rejected by Vadnais. Said pipe, some 5,112 feet in length, was manufactured in June of 1963 while plaintiff was negotiating with defendant Woolley respecting the elimination of the flanges required by the plans and specifications. Although these plans and specifications required that plaintiff notify Woolley in advance of the manufacture, plaintiff did not do so; for these reasons, and the further reason that they could not be tested without damage, the materials were rejected. Plaintiff then ordered the steel necessary to manufacture replacement pipe. Thereafter it never billed Vadnais for the pipe rejected by Woolley although some 62 separate invoices were sent to Vadnais for other of plaintiff's materials which it delivered. Plaintiff's first indication of its intention to charge Vadnais for the replaced pipe occurred on May 7, 1964, when a stop notice was filed with defendant Water Board. (Code Civ. Proc., § 1190.1.) The trial court made findings in favor of Vadnais as to the factual questions thus presented, finding against the further claim by plaintiff that Woolley did not act capriciously or arbitrarily in rejecting the subject materials. While other theories, either supporting or challenging this portion of the judgment are extensively argued, further discussion of the issues thus presented becomes unnecessary in light of the statement made by Vadnais that plaintiff, by appealing from only a portion of the judgment which is favorable to it and contesting that which is unfavorable, assumes inconsistent positions; hence the judgment should be reversed in its entirety, not just as to the portion appealed from. (*Sun Oil Co.* v. *Union Drilling etc. Co.,* 208 Cal. 114, 119 [280 P. 535].) The same argument must, of course, be applied to Vadnais which has appealed from the court's denial of its counterclaim. In the *Sun Oil* case the court stated: ''Where the provisions of the judgment are interdependent as here, an appellate court may not properly reverse the judgment as to the part complained of, allowing the remainder to stand.'' (P. 119.) In *Blache* v. *Blache,* 37 Cal.2d 531, 538 [233 P.2d 547], it was further pointed out that where portions of a judgment are so interwoven with the whole that an appeal from a part affects the other parts, the appellate court can reverse the entire judgment if it is necessary to do justice. While Woolley was represented by separate counsel (who have filed a brief on his behalf and on behalf of defendant Water Board), a goodly

534

portion of the brief filed by counsel for Vadnais is devoted to the point that he was not its agent (as contended by plaintiff), and a further portion of the same brief discusses other of Woolley's activities bearing upon the determination of issues below, i.e., that his actions in rejecting the pipe were neither arbitrary nor capricious.

There remains for determination the disposition of plaintiff's appeal as it relates to the fourth, ninth and tenth causes of action directed against defendants other than Vadnais. The fourth sought recovery from both Woolley and the Water Board for work, labor and materials; the ninth was based on the stop notice filed with the Water Board, while the tenth asked damages for tortious interference by Woolley with the Vadnais-USI contract. ■ The issues raised by the denial of the above demands seem so interwoven with those in the other causes of action involving Vadnais that a remand for retrial of the entire litigation might appear warranted except for the rule, to which we can find no exception, that such remand only applies where the judgment is *adverse to a non-appealing party* (*Blache* v. *Blache, supra*) ; here, of course, it is adverse to neither Woolley nor the Water Board and neither has appealed. Too, plaintiff's treatment of this phase of the controversy is sketchy—at best.

We consider first the claim of tortious interference by Woolley (tenth cause of action). Plaintiff made the claim that Woolley was an independent contractor and hence not clothed with the governmental immunity given him by statutory law; Woolley, on the other hand, contended that he was an employee of the Water Board and exercising discretion in such capacity. By virtue of section 820.2, Government Code, "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." (See *McCorkle* v. *City of Los Angeles,* 70 Cal.2d 252, 260-261 [74 Cal.Rptr. 389, 449 P.2d 453].) In *Burgdorf* v. *Funder,* 246 Cal.App.2d 443, 448 [54 Cal.Rptr. 805], the public policy reflected by the above statute was again given judicial approval: "Governmental immunity for liability for discretionary acts performed by public officers and employees in the exercise of their discretion has long been recognized in this state by judicial interpretation and is based on salutary public policy." While a "public employee" as defined in section 810.2 "does not include an independent contractor," the trial court was reasonably war-

ranted, under the evidence presented, in drawing the inference favoring the ''employee'' status claimed by Woolley. As to the remaining causes of action, we find no discussion in plaintiff's briefs with respect thereto meriting any attention; for example, nothing is said about the requirement of filing a claim with defendant Water Board (Gov. Code, § 905), which assertedly was not done. Absent any discussion or citation of supporting authority, such contentions stated in a brief are deemed to have been abandoned. (*Eistrat* v. *Irving Lbr. & Moulding, Inc.*, 210 Cal.App.2d 382, 390-391 [26 Cal. Rptr. 520].)

Insofar as it involves defendants Wooley and West Coast Water Board, the judgment as it relates to the fourth, ninth, and tenth causes of action is affirmed; in all other respects the judgment is reversed for retrial in accordance with the views herein expressed. Without cost to any party.

Fourt, Acting P. J., and Thompson, J., concurred.

A petition for a rehearing was denied March 25, 1969, and the petition of defendants and appellants for a hearing by the Supreme Court was denied May 8, 1969.