Filed 2/22/24  TD General Co. v. Chimes Tower Investment CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| TD GENERAL COMPANY, INC. et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CHIMES TOWER INVESTMENT INC., <br><br> Defendant and Respondent. | B322718 <br><br> (Los Angeles County Super. Ct. No. 20STCV27092) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara A. Meiers, Judge.  Reversed in part and remanded for further proceedings.

The Green Law Group, Mahbod M. Khalilpour; Benedon & Serlin, Gerald M. Serlin and Melinda W. Ebelhar for Plaintiffs and Appellants.

Lagerlof and Yaw-Jiun (Gene) Wu for Defendant and Respondent.

* * * * * *

A general contractor sued a hotel owner for breach of contract, quantum meruit, and other claims to recover amounts the general contractor alleged it was owed for construction work at the hotel. The trial court dismissed the breach of contract and quantum meruit claims on the pleadings, and the contractor has appealed. Although the court properly ruled that the claims as pled were not viable, the court abused its discretion in denying the contractor leave to amend. We accordingly reverse and remand for further proceedings.

**FACTS AND PROCEDURAL BACKGROUND**

I.  **Facts[1]**

A.  *The parties*

Daniel Hwang is the president of TD General Company, Inc. (TD General) (collectively, plaintiffs), which operates as a general contractor in the construction business.

Chimes Tower Investment Inc. (Chimes) owns the Zane Grey Pueblo Hotel (the hotel) located in the city of Avalon on Catalina Island. The hotel has three buildings—a north building, a west building, and a south building.

---

[1]   These facts are drawn from the operative complaint, the original complaint, and the exhibits attached to those pleadings.

### B. *Contracts between the parties*
#### 1. *Written original contract*

In late February 2017, TD General and Chimes executed a form contract in which Chimes hired TD General to make renovations to the north and west buildings of the hotel (the original contract). The renovations were to start on March 2, 2017, and were due to be "substantially complete[d]" by March 31, 2018, when a certificate of occupancy was to be obtained. For this work, Chimes would pay plaintiffs a total of $3,456,000, to be paid in monthly progress payments that allowed Chimes to withhold 10 percent of each monthly amount due until the certificate of occupancy was obtained. If TD General did any additional work on the hotel for which the parties could not agree on payment, plaintiffs would be paid their "actual cost plus reasonable overhead and profit." The parties agreed that any changes to the contract had to be made in writing.

#### 2. *Alleged oral modification or novation of original contract*

Plaintiffs assert that in "[a]pproximately . . . August 2017," "likely toward the end of 2017," or "[r]oughly around March of 2018," the parties orally agreed to alter the terms of the original contract in two ways: (1) they broadened the scope of work to include renovations to the south building and the pool deck of the hotel; and (2) they agreed that plaintiffs would be paid—rather than by a fixed amount—on a "cost-plus" basis, entitling plaintiffs to their costs plus a 10 percent "mark-up." It is unclear whether the shift to "cost-plus" payments pertained only to the newly added work or also to the work encompassed in the original contract.

3

From March 2017 "through" April 2019, Chimes paid plaintiffs' monthly payment demands. Chimes stopped paying in April 2019.

### 3. *Written supplemental agreement*

On June 10, 2019, TD General and Chimes entered into a "negotiat[ed]" "Supplementary Agreement" (the supplemental agreement). Under that agreement, which was drafted in Chinese, TD General agreed to (1) "finish and deliver" all renovations to the north and south buildings by June 15, 2019; (2) "finish and deliver" the south building's kitchen and "top floor main bathroom," the "outdoor handrails" of the south and north buildings, and the "swimming pool" by June 30, 2019; and (3) "complete[] and deliver[]" "all other constructions [sic]" by July 15, 2019. Chimes could impose a $5,000-per-day penalty under the supplemental agreement if TD General failed to meet these deadlines. Chimes agreed to pay $100,000 in past-due payments by June 10, 2019.

### C. *Issuance of certificate of occupancy*

On October 8, 2019, TD General "managed to complete the hotel project . . . when the City of Avalon . . . issued [a] Certificate of Occupancy."

By that time, Chimes had paid plaintiffs $6,998,785.

## II. Procedural Background

### A. *Operative complaint*

Plaintiffs sued Chimes on July 20, 2020, on the ground that Chimes still owes $807,614.26.[2] In the operative first amended complaint, plaintiffs alleged two claims pertinent to this appeal—

---

[2] The trial court sustained a demurrer to the original complaint with leave to amend.

namely, (1) "Breach of Written/Oral Contracts," and (2) "Common Count: Goods and Services Provided/Quantum Meruit."[3]

### B. *Demurrer to breach of contract claim*

In December 2020, Chimes demurred to the breach of contract claim on the ground that it had paid plaintiffs (that is, nearly $7 million total) more than they were owed by the terms of the original contract (that is, $3,456,000).[4]  After briefing and a hearing, the trial court sustained the demurrer on the ground— first mentioned by the court at the hearing—that an unspecified section of the Business and Professions Code "requires all construction contracts to be in writing and any change orders to be in writing, signed by both sides."

### C. *Motion for judgment on the pleadings to quantum meruit claim*

After Chimes filed its answer on the last remaining claim for quantum meruit,[5] Chimes filed a motion for judgment on the

---

[3]     Plaintiffs also alleged claims for (1) "Common Count: Account Stated," (2) "Negligent Misrepresentation," and (3) "Unjust Enrichment."  A demurrer to those claims was sustained without leave to amend, and plaintiffs have not appealed that ruling as to those claims.

[4]     Chimes simultaneously filed a motion to strike allegations regarding punitive damages and prejudgment interest, which the trial court granted as to the punitive damages allegations once it sustained a demurrer to the only tort claim in the first amended complaint.

[5]     Chimes also filed a cross-complaint alleging five claims, including that plaintiffs owed $425,000 under the penalty provision of the supplemental agreement, but later voluntarily dismissed that cross-complaint.

pleadings on the ground that courts may not grant a quantum meruit claim after they have dismissed a contract claim. After briefing and a hearing, the court granted the motion.

**D.** *Appeal*

After the court entered judgment at the parties' prompting, plaintiffs filed this timely appeal.

## DISCUSSION

Plaintiffs argue that the trial court erred in dismissing their breach of contract and quantum meruit claims and doing so without granting them leave to amend either claim.

A demurrer and a motion for judgment on the pleadings are "'equivalent.'" (*People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777.) In assessing both, we ask two questions: (1) Was the demurrer or motion properly sustained or granted, and (2) Was leave to amend properly denied? (*Shaeffer v. Califia Farms, LLC* (2020) 44 Cal.App.5th 1125, 1134 (*Shaeffer*).) In answering the first question, "we ask whether the operative complaint "'states facts sufficient to constitute a cause of action.""" (*California Dept. of Tax & Fee Administration v. Superior Court* (2020) 48 Cal.App.5th 922, 929; *Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100.) In undertaking that inquiry, we accept as true all material facts properly pleaded in the operative complaint as well as the facts appearing in the exhibits attached to it, giving precedence to the facts in the exhibits if they contradict the allegations. (*Tax & Fee Administration*, at p. 929; *Gray v. Dignity Health* (2021) 70 Cal.App.5th 225, 236, fn. 10; *Brakke v. Economic Concepts, Inc.* (2013) 213 Cal.App.4th 761, 766-767.) In answering the second question, we ask whether there is a reasonable possibility that the defect in the operative complaint

6

can be cured by amendment.  (*Shaeffer*, at p. 1134.)  We review the trial court's ruling regarding the first question de novo (so, we are not bound by the court's construction of the complaint or by its reasoning), and review its ruling regarding the second for an abuse of discretion.  (*Rodas v. Spiegel* (2001) 87 Cal.App.4th 513, 517; *Environmental Health Advocates, Inc. v. Sream, Inc.* (2022) 83 Cal.App.5th 721, 728-729; *Harris*, at p. 777; *Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 242.)

We will address the propriety of each cause of action.

## I.      Breach of Contract

### A.      *Was the demurrer to the breach of contract claim properly sustained?*

A demurrer is properly sustained if a "pleading does not state facts sufficient to constitute a cause of action" (Code Civ. Proc., § 430.10, subd. (e)), which, "[i]n an action founded upon a contract," renders a demurrer appropriate if "it cannot be ascertained from the pleading whether the contract is written, is oral, or is implied by conduct" (*id.*, subd. (g)).  Although plaintiffs here alleged three different contracts—the written original contract, the alleged oral modification to or novation of that contract, and the written supplemental agreement—and although we are ordinarily charged with "tak[ing] together" "[s]everal contracts relating to the same matters, between the same parties" (Civ. Code, § 1642), it is impossible to ascertain whether plaintiffs' breach of contract claim—as currently pled— is based on a written or oral contract.

We reach this conclusion for two reasons.

First, plaintiffs vacillate between referring to the alleged oral contract as being a "novation" and a "modification" of the

7

original contract; at times, plaintiffs even seem to assert that characterizing it as one or the other does not matter.[6]

But it does.

A "novation" *extinguishes* a prior contract and *replaces* it with a new contract (Civ. Code, § 1531, subd. (1); *Alexander v. Angel* (1951) 37 Cal.2d 856, 860-861; *Wells Fargo Bank v. Bank of America* (1995) 32 Cal.App.4th 424, 431), so if the oral contract in this case effected a *novation*, then plaintiffs are suing on an oral contract. A "modification," by contrast, alters an existing contract without extinguishing it (e.g., *Davies Machinery Co. v. Pine Mountain Club, Inc.* (1974) 39 Cal.App.3d 18, 25), so if the oral contract in this case effected a *modification*, then plaintiffs are suing on a written contract that was modified orally. What distinguishes a novation from a modification is not how much the new contract deviates from the prior contract, but instead whether the parties intended to extinguish the prior contract. (E.g., *Howard v. County of Amador* (1990) 220 Cal.App.3d 962, 978.) The allegations in the operative complaint do not speak to the parties' intent in this regard.

Second, the supplemental agreement further complicates and confounds the nature of plaintiffs' contract claim. Plaintiffs attached the supplemental agreement to their operative complaint, but argue on appeal that it is invalid because it was the product of economic duress, lacks consideration, and is doomed to fail because it sets impossible deadlines. The

---

[6]     Plaintiffs complicate matters further by referring to "abandonment" as a third possible theory, but, as discussed below, it is not; instead, abandonment of a prior contract is part of the showing necessary to establish a novation. (E.g., *Hunt v. Smyth* (1972) 25 Cal.App.3d 807, 818.)

supplemental agreement is irrelevant if it is invalid. But if the supplemental agreement is valid, then plaintiffs' contract claim is either based on (1) an oral contract (due to the novation) modified by a written contract (that is, the supplemental agreement); or (2) a written contract that was modified orally (due to a modification) and then again in writing (that is, the supplemental agreement).

Although we must liberally construe pleadings and parties may plead claims in the alternative, the law makes clear that it is insufficient to allege a contract that is everything, every way, all at the same time. Yet that is precisely what plaintiffs have done.[7]

Thus, the trial court did not err in sustaining the demurrer to plaintiffs' claim for breach of contract.

B.     *Was leave to amend the breach of contract claim properly denied?*

Plaintiffs have offered various ways in which they may amend the convoluted defect in the operative complaint described above that would, hopefully, clarify the nature and basis of the contract on which plaintiffs are suing. (*Shaeffer*, *supra*, 44 Cal.App.5th at p. 1145 ["[t]he onus is on the *plaintiff* to articulate" the ways in which the identified defect can be "cure[d]".) Chimes nevertheless proffers what boils down to three reasons why plaintiffs' breach of contract claim is barred as a matter of law and, therefore, why the trial court did not abuse its discretion in denying plaintiffs leave to amend.

---

[7]     Because it is the ambiguous nature of plaintiffs' pleading that dooms the current articulation of the contract claim, we need not examine whether the supplemental agreement is invalid on any of the myriad theories plaintiffs offer up.

9

First, Chimes argues that the oral alteration to the original contract—whether it is deemed a novation or a modification—is unenforceable because (1) the statute of frauds (Civ. Code, § 1624) applies, and (2) the original contract required any changes to be made in writing;[8] because the oral alteration is plaintiffs' sole alleged basis for seeking more than the original contract price, Chimes reasons, its invalidity means plaintiffs have suffered no damage.

We reject this claim.

Although the statute of frauds declares "[a]n agreement that by its terms is not to be performed within a year from the making thereof" to be "invalid" if is it not in writing (Civ. Code, § 1624, subd. (a)(1); *Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 671), it is unclear whether this provision applies here because it has been construed to apply only when an agreement "*cannot* be performed within" a year (*Hollywood Motion Picture Equipment Co. v. Furer* (1940) 16 Cal.2d 184, 187, italics in original), and there is nothing to establish that it was impossible to complete the renovations within a year, even though it was contemplated to—and did—take longer.  Even if we construe the statute of frauds as applying here, it does not bar the enforceability of a contract where one of the parties has "fully performed all of [their] obligations under the" contract at issue (*Zakk v. Diesel* (2019) 33 Cal.App.5th 431, 454, 451-452; *Nesson v. Moes* (1963) 215 Cal.App.2d 655, 659; *Prince v. Varona* (1956) 144 Cal.App.2d 673, 676), and it is undisputed that, based on the issuance of the certificate of occupancy for the hotel, TD General

---

[8]    Chimes does not attempt to defend the trial court's reasoning.

10

completed the renovations.[9]  Chimes resists this conclusion, relying on its argument that plaintiffs did not obtain the certificate of occupancy until three months after the due date set forth in the supplemental agreement, but tardiness speaks only to *timing*, not to the substance of what plaintiffs were contractually obligated to do—and the statute of frauds is concerned with the latter.

In addition, although Civil Code section 1698 specifies that "[a] contract in writing may be modified by a contract in writing" (Civ. Code, § 1698, subd. (a)), and the original contract in this case explicitly calls for any modifications to that contract or any change orders to all be in writing, it is well settled that "[a] contract in writing may be modified by an oral agreement to the extent that the oral agreement is executed by the parties" (*id.*, subd. (b))—even where, as here, "the original contract provides that extra work must be approved in writing" (*MacIsaac & Menke Co. v. Cardox Corp.* (1961) 193 Cal.App.2d 661, 670).  As described above, plaintiffs completed the renovations.

Second, Chimes argues that plaintiffs admitted they did not "complete" the renovations until October 8, 2019, that this constitutes a breach of the contract, and that plaintiffs are therefore barred from suing because they cannot establish their own performance of the contract.  (*Pech v. Morgan* (2021) 61 Cal.App.5th 841, 855.)  We reject this argument as well.  The parties debate whether "completion" refers to *finishing the renovations* or *obtaining a certificate of occupancy*.  We need not enter that fray because, even if plaintiffs did not complete their

---

[9]      We consequently have no occasion to examine plaintiffs' argument that Chimes is estopped from relying upon the statute of frauds.

11

contractual duties until the certificate of occupancy was issued and even though that occurred three months after the deadline set forth in the supplemental agreement, plaintiffs can allege that that this constitutes substantial performance, and a plaintiff's substantial performance with their obligations under a contract is sufficient to enable them to sue on that contract. (*Patrick J. Ruane, Inc. v. Parker* (1960) 185 Cal.App.2d 488, 503-504 [a contractor "need prove only substantial performance" because owner is "allowed an offset for deficiencies in the work"]; *Magic Carpet Ride LLC v. Rugger Investment Group, L.L.C.* (2019) 41 Cal.App.5th 357, 364 [same]; *Lowy v. United Pacific Ins. Co.* (1967) 67 Cal.2d 87, 92-93 [substantial performance "in the case of a building contract" exists "where the owner has taken possession of the building"].)  Chimes resists this conclusion, pointing to the parties' interlineation of a paragraph in the original contract referring to "Substantial *Completion*."  (Italics added.)  But this omitted section would have set up a milestone that triggered inspection by the architect; it did not speak to whether substantial performance would be permitted.  On *that* question, the original contract elsewhere seems to contemplate that substantial performance will suffice when it specified that plaintiffs were obligated to "substantially complete" the renovations by March 31, 2018.  Chimes also suggests that being months late can never be substantial performance as a matter of law; it cites no law for this sweeping proposition.

Third and lastly, Chimes cites *Ladas v. California State Auto. Assn.* (1993) 19 Cal.App.4th 761, and thus seems to be arguing that the contracts are so void as to be unenforceable.  We agree that they are too vaguely alleged to withstand a demurrer,

12

but they are not inherently vague to such a degree that granting plaintiffs a further opportunity to amend should be foreclosed.

## II.    Quantum Meruit

To state a claim for quantum meruit, a plaintiff must allege that (1) it "acted pursuant to 'an explicit or implicit request for the services' by the defendant," and (2) "the services conferred a benefit on the defendant."  (*Port Medical Wellness, Inc. v. Connecticut General Life Ins. Co.* (2018) 24 Cal.App.5th 153, 180.) Plaintiffs have alleged in various places in the operative complaint that the contracts requested TD General's services as a general contractor, and that the renovations plaintiffs performed benefitted Chimes.  Those allegations are sufficient.  Although an otherwise valid claim for quantum meruit must be dismissed if a related breach of contract claim is barred by the statute of frauds (to avoid turning quantum meruit into a means of end-running around the statute) (*Westside Estate Agency, Inc. v. Randall* (2016) 6 Cal.App.5th 317, 324), the statute of frauds is not implicated at this point of this case.  And although a plaintiff may not *recover* on both a breach of contract and a quantum meruit theory, it may plead both theories in the alternative. (*Newport Harbor Ventures, LLC v. Morris Cerullo World Evangelism* (2016) 6 Cal.App.5th 1207, 1223.)

Thus, the trial court erred in dismissing plaintiffs' quantum meruit claim as foreclosed by its demurrer ruling.

13

## DISPOSITION

The judgment is reversed in part, and remanded for further proceedings in which plaintiffs shall have leave to file an amended complaint as to only their breach of contract and quantum meruit claims.  The judgment is affirmed in all other respects.  The parties are to bear their own costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

_____, J.

HOFFSTADT

We concur:

_____, Acting P. J.

ASHMANN-GERST

_____, J.

CHAVEZ

14